Abraham J. ’Gellihoff, J.
This is an action for a declaratory judgment and an injunction, brought as a class action by the owner of rent-controlled property in the City of ‘New York, on behalf of .plaintiff and all other owners similarly situated. The action seeks to invalidate a recently adopted New York City Local Law (Local Laws, 1973, No. 24 of City of New York), enacted over the Mayor’s veto. The law, inter alia, (1) repealed the maximum base rent (MBR) provisions then contained in the City Rent and Rehabilitation Law (Local Laws, 1962, No. 20 of City of New York, as amd. by Local Laws, 1970, No. 30 of City of New York), and (2) repealed the 8%% return hardship increase provision then contained therein. Both sides move for summary judgment.
Local Law No. 24 for 1973 became a law on June 14, 1973. On that date there was in effect chapter 372 of the Laws of 1971 of the State of New York. Chapter 372 became law on June 1, 1971. It amended the State’s enabling act, which had given the City of New York authorization to regulate and control rents (Local Emergency Housing Rent Control Act [L. 1962, ch. 21, § 1]). Chapter 372 provided, inter alia (in § 1, last sentence), that in cities with a population of one million or more: “No housing accommodations presently subject to regulation and control pursuant to local laws or ordinances adopted or amended under authority of this subdivision shall hereafter be by local law or ordinance subjected to more stringent or restrictive provisions of regulation and control than those presently in effect.” Plaintiff contends that Local Law 24 contains more stringent or restrictive provisions than those in effect when chapter 372 was enacted, and that Local Law 24 is therefore invalid. Defendants counter by charging that chapter 372 is itself invalid. They contend that chapter 372 is a “ special law,” enacted without request therefor by the municipality, and that it is therefore unconstitutional.
Section 3 (subd. [d], par. [4]) of article IX of the State Constitution defines a “ special law ” as “ a law which in terms and in effect applies to one or more, but not all * * * cities.” .Section 2 (subd. [b], par. [2]) of article IX provides that the Legislature “ shall have the power to act in relation to the property, affairs or government of any local government only by general law, or by special law only * * * on request of two-thirds of the total membership of its legislative body *427 or on request of its chief executive officer concurred in by a majority of such membership ”.
State rent control legislation does not relate to the “ property, affairs or government ’ ’ of the city. Rent control is a matter of State concern and, since the city receives its power to regulate rent control by a grant from the State, “ it cannot challenge a reduction of its governmental powers by the State ’ ’ (City of New York v. State of New York, 67 Misc 2d 513, 514, affd. 31 N Y 2d 804). The State may enact legislation with respect to rent control even if limited to cities with a population of one million or more. Chapter 372 does not offend section 2 (subd. [b], par. [2]) of article IX of the State Constitution, and is valid.
If Local Law No. 24, enacted June 14, 1973, contains “ provisions of regulation ” subjecting housing accommodations to “more stringent or restrictive provisions of regulation” than those in effect on June 1, 1971 — the effective date of chapter 372 — then, to the extent it does, it is violative of chapter 372. The court’s first task, therefore, is to ascertain the provisions of regulation that were in effect on June 1,1971.
The provisions of regulation in effect on June 1, 1971 have their basis in the State enabling act, effective May 1, 1962. Pursuant to the act, the city enacted the City Rent and Rehabilitation Law, ns title Y of the Administrative Code of the City of New York, effective May 1, 1962 (Local Law No. 20 for 1962). Thereafter, the city amended title Y by enacting Local Law No. 30 of the Local Laws of 1970, approved by the Mayor on July 10, 1970.
Section 11 of Local Law No. 30 of the Local Laws of 1970, provided, inter alia, that subdivision a of section Y51-5.0 be amended by adding thereto four new paragraphs, to be numbered paragraphs (3), (4), (5) and (6), to read, so far as here pertinent, as follows:
“ (3) The city rent agency shall establish maximum rents to be effective January first, nineteen hundred seventy-two by dividing the maximum gross buildiny rental from all housing accommodations in the property whether or not subject to or exempt from control under this title by the number of such accommodations, after giving consideration to such factors as may be prescribed by formula, such as size and location of housing accommodations and number of rooms. Such maximum gross building rental shall be computed on the basis of real estate taxes, water rates and sewer charges and an operation and maintenance expense allowance, <t vacancy allowance not *428 in excess of two percent, and a collection loss allowance, both as prescribed by such agency, and an eight and one half percentum return on capital value * * *
“ The agency shall report to the council on or before October fifteenth, nineteen hundred seventy-one as to .the status of preparation of the formulas necessary to implement the rent adjustments to be effective January first, nineteen hundred seventy-two * * *
“ (4) The city rent agency shall establish maximum rents effective January first, nineteen hundred seventy-four and biennially thereafter by adjusting the existing maximum rent to reflect changes, if any, in the factors which determine maximum gross building rental under paragraph (3) of this subdivision * * *
“ (5) Where a maximum rent established pursuant to this title on or after January first, nineteen hundred seventy-two is higher than the previously existing maximum rent, the landlord may not collect more than seven and one-half percentum increase from a tenant in occupancy on such date in any one year period, provided however ”. y •
In section 33 of Local Law 30, it is expressly stated that ‘ ‘ This local law shall take effect immediately, except ’ ’ that other specifically enumerated sections — section 11 is not one of them— “shall take effect on January first, nineteen hundred' seventy-two”. Therefore, the entire text of section 11 of Local Law Ho. 30, including all its “provisions of regulation and control,” 'took effect immediately on July 10, 1970, upon approval of Local Law Ho. 30 by the Mayor.
The provisions of regulation and control contained in section 11 mandated the City Bent Agency to establish maximum rents, to establish a formula on which such maximum rents should be based, and to report to the City Council “ as to the status’of preparation of the formulas necessary to implement the rents I to be effective.” The mandate to establish maximum rents went i into effect immediately. The dates on which the maximum rents are declared by section 11 to be “ effective ” constitute merely the timetable for making operative the rents already mandated. It is the mandate contained in section 11 which constitutes the provision of regulation and control, and that mandate took effect on July 10, 1970, and was in effect on June 1, 1971.
Defendants rely on Matter of 241 East 22nd St. Corp. v. City Rent Agency (39 A D 2d 453)., currently .sub judice in the Court of Appeals, for the proposition that ‘ ‘ The MBB formula was *429 to go into effect in January, 1972 ” (p. 455). That decision, however, is inapposite. The issue in that case was the power of the City Rent Agency to promulgate an amendment to its regulations despite a July 2, 1971 “freeze” on regulations (L. 1971, ch. 1012) similar to the “ freeze ” on laws contained in chapter 372. The amending regulation, purported to subordinate building-wide hardship rent increases to the maximum rent individually established for each apartment under the same formula as contained in section 11 of Local Law No. 30. The amending regulation had an effective date of January 1, • 1972. Giving the amending regulation .the shorthand title “ The MBR formula ” (39 A D 2d, at p. 454), the Appellate Division (per Steuer, J.) rejected the city’s argument — that the amending regulation was valid because it applied to Local Law No. 30 and Local Law No. 30 was in effect prior to July 2, 1971 — by ruling that .the city’s argument “ overlooks the fact that chapter 1012 speaks of any change in existing regulation. ’ ’ Thus, reasoned the court, since “ the MBR formula [the amending regulation] was to go into effect in January, 1972 ”, it changed the regulation existing on July 2, 1971, and was therefore subject to chapter 1012 (39 A D 2d, at p. 455). The Appellate Division did not refer to the effective date of section 11 of Local Law No. 30 at all. The quotation relied upon is out of context, and the decision inapplicable here.
In short, to ascertain the ‘ ‘ provisions of regulation and control ” in effect on June 1, 1971, the test is th¿ effective date of the provisions of regulation, not the effective date of the maximum rent established .by the effective provisions of regulation. Section 11 of Local Law No. 30, in its entirety, was in effect on June 1, 1971.
The remaining question, therefore, is whether the repeal by Local Law No. 24 of .the provisions of regulation contained in section 11 subjects housing accommodations to “more stringent or restrictive provisions of regulation ” than those contained in section 11. The answer is plain. The repeal by section 2 of Local Law No. 24 of the MBR system deprives property owners of- their existing right to receive all additional rent increases provided for by section 11, and confers no benefit upon them. The provisions of regulation of section 2 of Local Law No. 24 aré more stringent and restrictive than the provisions of regulation in effect on June 1, 1971. Section 2 of Local Law No. 24 is therefore void.
Local Law No, 24 (§ 3) also repealed another section of Local Law No. 30 (§ 12) which provided the basis for ealeu *430 lating hardship rent increases (Administrative Code, § Y51-5.0, subd. g, par. [1], subpar. [a]). But by explicit language, section 33 of Local Law No. 30 provides that section 12 shall not “ take effect ” until January 1, 1972. While a court may construe a statute and determine its meaning, as the court has done with respect to section 11, it may not, in the guise of construction, alter the explicit and unambiguous language of a statute as written. The provisions of regulation contained in section 12 of Local Law No. 30 were not in effect on June 1, 1971. The repeal thereof by section 3 of Local Law No. 24 is therefore valid.
The construction by the court of the statutes involved herein leaves rent control in the City of New York in a highly undesirable state. Under the court’s ruling consistency is replaced by inconsistency. Regression to the former hardship formula, in the face of prevailing mortgage and financing rates, might very well exacerbate and accelerate the widespread landlord disinvestment both the city and State are trying desperately to stem. Properties most in need of financial assistance to avoid increasing deterioration and abandonment will receive less relief than previously available. A property owner most willing to make improvements in his building is least likely to he reimbursed.
Nevertheless, this court has no alternative but to rule as it has. Even though section 12 of Local Law No. 30 was a companion amendment to section 11, and apparently was intended to be integrated with it, this court may not rule that section 12 was in effect on June 1,1971 when section 33 of Local Law No. 30 specifically says that section 12 “ shall take effect January first, nineteen hundred seventy-two ”, and may not rule that section 11 was not in effect on June 1, 1971, when the plain language of section 11 and section 33 is to the contrary. The court, disclaiming possession of Solomonic wisdom, is regretfully compelled to split the rent control baby in half. The remedy lies with the State Legislature and the City Council.
Motion and cross motion are granted to the extent herein indicated, and otherwise denied.