*189 OPINION OF THE COURT
Arnold G. Fraiman, J.
In this action for a declaratory judgment declaring New York City Local Law No. 76 of 1977 ("Labor Cost Repeal Law”) invalid and enjoining its enforcement, both sides move for summary judgment.
Plaintiffs are the owners of property subject to rent control and seek a judgment on behalf of themselves and all others similarly situated. Defendants are the City of New York, the City Rent Agency and an individual tenant of a rent controlled apartment. Defendant-intervenors are the Coalition Against Rent Increase Pass-Alongs (CARIP), an unincorporated association consisting of several New York City tenant organizations.
Plaintiffs contend that Local Law No. 76 is invalid in that it is violative of a State law which prohibits the enactment by the city of more stringent or restrictive laws or ordinances affecting residential rent control than those in effect on June 1, 1971 (L 1971, ch 372).
The Labor Cost Repeal Law was enacted as a "clarification” of a provision commonly referred to as "the labor cost pass-along” in Local Law No. 30 of 1970 (the "Maximum Base Rent Law”). Local Law No. 30, which constituted a sweeping revision of the city rent control laws, was enacted on July 10, 1970. It resulted from a study which indicated that massive housing disinvestment, and abandonment and deterioration of the city’s housing stock was attributable in large measure to uneconomic rents. Basically, it provided for the establishment, effective January 1, 1972, of a maximum base rent ceiling for each rent controlled apartment. The maximum base rent ceiling, or MBR, was to be calculated to reflect an apartment’s equitable share of the revenue required for the economic operation of the building under proper maintenance, and also to provide the owner with a minimum 8ti% return on his investment. The MBR was to be recalculated biennially thereafter to reflect changes in operating costs. In order to avoid overly precipitious increases in the rents for individual apartments, Local Law No. 30 provided that where the MBR was more than 1V2% above the existing rent for an apartment on December 31, 1971, then, with certain exceptions, the maximum collectible rent could be increased by only 71A% on January 1, 1972, and thereafter the balance of the difference between the actual rent and the MBR ceiling could be col *190 lected in subsequent 1V%% annual increases commencing January 1, 1973, until the actual rent equalled the MBR ceiling.
The limitation of annual rent increases to 7ti% is set forth in section Y51-5.0 (subd a, par [5]) of the Administrative Code of the City of New York, as contained in section 11 of Local Law No. 30. This provides as follows: "Where a maximum rent established pursuant to this title on or after January first, nineteen hundred seventy-two, is higher than the previously existing maximum rent, the landlord may not collect more than seven and one-half per centum increase from a tenant in occupancy on such date in any one year period, provided however, that where the period for which rent is established exceeds one year, regardless of how the collection thereof is averaged over such period, the rent the landlord shall be entitled to receive during the first twelve months shall not be increased by more than seven and one-half per centum over the previous rent and additional annual rents shall not exceed seven and one-half per centum of the rent paid during the previous year.”
Paragraph (5) then concludes: "Notwithstanding any of the foregoing limitations in this paragraph (5), maximum rent shall be increased if ordered by the agency pursuant to subparagraphs (d), (e), (f), (g), (h), (i), (k), (1), or (m) of paragraph (1) of subdivision g of this section.”
Paragraph (1) of subdivision g (Administrative Code, § Y515.0, subd g, par [1]), referred to in the last sentence above provides in relevant part that "[provision shall be made, pursuant to regulations prescribed by [the city rent] agency, for individual adjustment of maximum rents where: * * * (d) [increased services or equipment is provided]; (e) [increase in dwelling space is provided]; (f) [substantial rehabilitation is made]; (g) [major capital improvements are made]; (h) [other improvements are made with consent of 75% of tenants]; (i) [there is subletting without consent]; (k) [additional capital improvements are made]; (1) the actual labor expenses currently incurred or to be incurred (pursuant to a collective agreement or other obligation actually entered into by the landlord) exceed the provision for payroll expenses in the current applicable operating and maintenance expense allowance under subdivision a of this section; (m) [rehabilitation of substandard housing is partially financed by public funds].”
Clause [subparagraph] (1) of paragraph (1) of subdivision g, quoted above, is the so-called labor cost pass-along provision. *191 Following several mandamus proceedings, the City Rent Agency in March, 1977 commenced accepting individual applications from landlords for increases in collectible rent over and above the 1Vi% limitation, by reason of increased labor costs, pursuant to clause (1). Thereafter, on October 28, 1977, then Mayor Beame signed into law Local Law No. 76, the so-called Labor Cost Repeal Law, which the City Council had enacted "[t]o amend the administrative code of the city of New York, in relation to clarifying the labor cost pass-along.” According to the bill’s preamble, its purpose was to clarify the City Council’s intent in enacting Local Law No. 30 insofar as it related to the so-called labor cost pass-along provision. That intent, as stated in the preamble, was that labor cost adjustments were to be included in the annual increase, and were not to be an addition to the collectible rent over and above 7A%. It then specifically so provided and also provided that any labor cost adjustment was to be reflected only in the MBR ceiling, and not in the collectible rent. Finally, it provided that the operation of the bill was retroactive and that any labor cost pass-alongs theretofor granted which resulted in a rent increase exceeding 1Vi% in one year were void and were to be refunded to tenants in monthly installments commencing January 1, 1978.
Plaintiffs instituted their action immediately following the enactment of the Labor Cost Repeal Law. Pending determination of the instant motions the court has directed that the clause therein requiring refunds in monthly installments subsequent to January 1, 1978 could be satisfied by the placing of such refunds in escrow bank accounts to be opened by the landlords involved.
Chapter 372 of the laws of 1971 amended the State’s Enabling Act, which in 1962 had given the city authorization to regulate and control rents (Local Emergency Housing Rent Control Act [L 1962, ch 21, § 1]). It provided that in cities having a population of one million or more that ”[n]o housing accommodations presently subject to regulation and control pursuant to local laws or ordinances adopted or amended under authority of this subdivision shall hereafter be by local law or ordinance subjected to more stringent or restrictive provisions of regulation and control than those presently in effect.” In 210 East 68th St. Corp. v City Rent Agency of City of N. Y. (76 Misc 2d 425, mod 43 AD2d 687, affd 34 NY2d 560) the validity of chapter 372 was upheld over a challenge to its *192 constitutionality, and, indeed, defendants herein raise no question as to its validity.
Thus, the sole issue before the court is whether the Labor . Cost Repeal Law subjects rent controlled housing accommodations in the city to more stringent or restrictive provisions of regulation and control than those contained in Local Law No. 30. If it does, then it is void as violative of chapter 372. Defendants, however, contend that the Labor Cost Repeal Law was enacted to clarify the City Council’s original intent and purpose in enacting the labor cost pass-along section of Local Law No. 30, in order to eliminate any ambiguity in its interpretation, and therefore chapter 372, prohibiting as it does only "more stringent or restrictive provisions of regulation and control” is inapplicable. In essence, it is their contention that paragraph (5) of subdivision a as set forth in section 11 of Local Law No. 30 (Administrative Code, § Y51-5.0, subd a, par [5]) provides only for an increase in the maximum base rent by reason of increased labor costs, and not in the collectible rent, except insofar as it is included in the maximum 7V2% increase permitted in any year and the Labor Cost Repeal Law merely makes this unequivocally clear, and thus does not constitute a more restrictive law or ordinance in violation of chapter 372.
This analysis flies in the face of the clear and plain language of Local Law No. 30, and its interpretation by those responsible for its enforcement. Paragraph (5) of subdivision a as contained in section 11 of Local Law No. 30, after setting forth the 1V2% limitation on increases in collectible rent in any one-year period, then unambiguously provides that notwithstanding the foregoing limitation, "maximum rent” shall be increased if ordered by the Rent Agency in nine of the special situations set forth in paragraph (1) of subdivision g of section Y51-5.0. That paragraph provides for individual adjustment of "maximum rents” in a total of 13 contingencies. Defendants’ argument that in the nine exceptions carved out of paragraph (5), only the maximum base rent may be increased rather than the collectible rent, is belied not only by the plain meaning of this statute but by two other factors as well: First, paragraph (5) explicitly concerns itself with a 7A% limitation on increases in collectible rent, and not with a limitation on increases in maximum base rent. Paragraph (4), as contained in section 11 of Local Law No. 30, is concerned with maximum base rent. It provides that the maxi *193 mum base rent ceiling is to be adjusted biennially to reflect changes in operation and maintenance costs. If, as defendants contend, the purpose of the exception clause was to permit increases in maximum base rent by reason of the occurrence of any of the nine contingencies set forth therein, at times other than biennially as provided for in paragraph (4), the appropriate place for such a clause would have been paragraph (4) rather than paragraph (5). And second, paragraph (3) of subdivision g as contained in section 14 of Local Law No. 30 (§ Y51-5.0, subd g, par [3]) specifically provides that any adjustment in maximum rent for 3 of the 13 contingencies contained therein (els (a), (b), or (c)), "shall be subject to the limitation set forth in paragraph (5) of subdivision a of this section”, i.e., the 7ti% limitation on increases in collectible rent. Obviously, if it were intended that the other contingencies including the labor cost pass-along were also to be subject to that limitation, this would have been the appropriate place to so provide. Inclusio unius est exclusio alterius.
Not only does the unambiguous language and statutory scheme of Local Law No. 30 negate the strained interpretation sought by defendants, but, as noted, the interpretation given the labor cost pass-along provision by the Rent Agency itself is contrary thereto.
Local Law No. 30 required the City Rent Agency to report to the City Council by October 15, 1971 as to the status of preparation of the formulae necessary to implement the rent adjustments to be effective January 1, 1972. In compliance therewith the Housing and Development Administration, the Department of Rent and Housing Maintenance and the Rent Control Implementation Management prepared a so-called Blue Book entitled "The Maximum Base Rents Formula — A Cost Index Approach to Controlled Rents”. Copies were sent to the entire City Council membership and to the Board of Estimate. Page 45 of the Blue Book consists of a chart with the following caption: "Other rent increase provisions will continue to operate and are divided into three categories”. The three categories set forth in the chart are designated as follows: "1. Added to MBR and 1972 Collectible Rent — Not subject to 7ti% limitation”; "2. Added to MBR — Subject to 7V6% annual increase in collectible rent”; and "3. Added to 1972 Rent but not MBR”. Increased labor costs are listed under the first category, i.e., rent increase provisions which *194 are to be added both to MBR and 1972 collectible rent and which are not subject to the 71/i% limitation.
Further, this interpretation has been adhered to by the City Rent Agency in briefs submitted by it in numerous lawsuits following the enactment of Local Law No. 30. Thus, as just one example, in Parkchester Tenants’ Assn. v Yoswein (79 Misc 2d 859, affd 47 AD2d 721, lv to app den 36 NY2d 644) the City Rent Agency, in referring in its brief to the labor cost pass-along provision in paragraph (5) of subdivision a, stated as follows: "It also specifies that the annual 71A%, maximum limitation prescribed for MBR and hardship increases does not apply.” It is well settled that a court may place controlling weight on an administrative agency’s interpretation of a statute under which it functions, unless the court finds such interpretation to be arbitrary and unreasonable. (Matter of Hotel Assn. of N. Y. City v Weaver, 3 NY2d 206; Hotel Armstrong v Temporary State Housing Rent Comm., 11 AD2d 395.) For the reasons stated herein, the court finds it neither arbitrary nor unreasonable for the City Rent Agency to have concluded in the past that the labor cost pass-along provision of Local Law No. 30 is not subject to the 7ti% annual limitation on collectible rent.
Finally, we turn to the weight and effect to be given to the City Council’s purported "clarification” in Local Law No. 76 of 1977 of its purpose and intent in enacting Local Law No. 30 in 1970. At the outset, it should be noted that only 14 of the 43 members of the City Council which enacted Local Law No. 76 were members of the Council which enacted Local Law No. 30. Hence, their statement of the 1970 City Council’s legislative intent in enacting Local Law No. 30 perforce loses much of its weight. (See People ex rel. Mutual Life Ins. Co. of N. Y. v Board of Supervisors of City & County of N. Y., 16 NY 424, 431-432.) Moreover, here the plain meaning of Local Law No. 30 compels the conclusion that the labor cost pass-along is not limited by the 7Vi% restriction on annual increases in collectible rent. Under such circumstances it is inappropriate to look elsewhere for legislative intent. As the Court of Appeals noted in Matter of Roosevelt Raceway v Monaghan (9 NY2d 293, 304): "if the language of a statute is plain and unambiguous, there is neither need nor warrant to look elsewhere for its meaning. [Citing cases.] This principle is, of course, no less compelling because 'the other means of interpretation’ urged is a later so-called clarifying statute. The Legislature has no *195 power to declare, retroactively, that an existing statute shall receive a given construction when such a construction is contrary to that which the statute would ordinarily have received.”
For all of the foregoing reasons, the court concludes that Local Law No. 76 of 1977, the so-called Labor Cost Repeal Law, is more stringent and restrictive than Local Law No. 30 and therefore is invalid as being in contravention of chapter 372 of the Laws of 1971 (State Enabling Act). Accordingly, plaintiffs’ motion for summary judgment is granted. Settle order, including a provision therein for the return to the landlords of all escrowed funds heretofor deposited pursuant to the court’s order of December 13, 1977.