HOTEL ARMSTRONG, INC., Respondent, *v.* TEMPORARY STATE HOUS-ING RENT COMMISSION et al., Appellants, and LOUIS J. LEFKOWITZ, Attorney-General of the State of New York, Intervenor-Appellant.

First Department, November 22, 1960.

*Emory Gardiner* of counsel (*Harold Zucker,* attorney), for State Rent Administrator, appellant.

*Philip Watson* of counsel (*Paxton Blair* with him on the brief; *Louis J. Lefkowitz, Attorney-General,* in his statutory capacity under section 71 of the Executive Law), for intervenor-appellant.

*Jack Newton Lerner* for respondent.

BREITEL, J. P.   Plaintiff, the owner of housing accommodations styled as a hotel, seeks a declaratory judgment that the State Housing Rent Commission is without power to regulate the rents charged by it.   It asserts that the 1959 amendments to the controlling statute (L. 1959, ch. 695), under which the Rent Commission has acted, are not applicable, and that, in any event, the amendments are unconstitutional for lack of legislative standards to guide the exercise of administrative discretion.

Special Term, on cross motions for summary judgment, granted judgment in favor of plaintiff, holding that the amendments were limited to revesting rent control in the Rent Commission only with respect to purported hotels whose rents had

been regulated by the State Commission at some prior time. Special Term did not pass upon the question of the validity of that part of the amendments which was attacked as lacking sufficient legislative standards to satisfy constitutional requirements.*

The order and judgment denying defendants' motions for summary judgment and granting plaintiff's motion for such summary judgment should be reversed, the defendants' motions granted, and plaintiff's motion denied. The 1959 amendments are applicable to plaintiff's premises and there is no constitutional infirmity.

Plaintiff owns premises at 202 West 103rd Street, in Manhattan, known as the Hotel Armstrong. In 1949 the then owner had been granted a certificate of occupancy for the premises as a hotel. According to plaintiff, the premises had not been subject to rent control under the predecessor Federal rent control statutes, and its rents had never, concededly, been under the regulation of the State Rent Commission. Plaintiff purchased the premises in February, 1959 in the view that they were exempt from rent control. The Rent Commission, asserting that the premises are merely a rooming house, whatever their prior status, started proceedings to fix and enforce maximum rents in accordance with the 1959 amendments to the State Residential Rent Law. These amendments became effective June 30, 1959, having become law with the approval of the Governor on April 22, 1959.

The State Residential Rent Law, although enacted as early as 1946, has been in operative effect only since 1950 (L. 1946, ch. 274, as last amd. by L. 1959, ch. 695). From its inception, only certain hotels were subject to rent regulations and then only in qualified fashion (*ibid.* § 2, subd. 2, par. [b]). Because plaintiff contends that its housing accommodations have never been subject to rent control under the State statutes it argues that the 1959 amendments are not applicable to it. Referring not only to the language of the amendments but to the 1959 Report of the New York State Temporary Commission to Study Rents and Rental Conditions (N. Y. Legis. Doc., 1959, No. 45) plaintiff argues that the intention and effect of the statute was merely to recontrol so-called hotels which had been under control either as hotels or as rooming houses and had been decontrolled since 1950.

---

* Of course, except for the constitutional question raised plaintiff would have been relegated to its administrative remedy and review under article 78 of the Civil Practice Act (State Residential Rent Law, § 9, subd. 4; L. 1946, ch. 274, as amd.).

Plaintiff also argues that so much of the 1959 amendments which authorize the Rent Commission to fix rents in certain hotels is invalid because there are insufficient legislative standards. Thus, the attacked provision authorizes the fixing of maximum rents by the administrative agency "having regard for any factors bearing on the equities involved, consistent with the purposes of this act to correct speculative, abnormal and unwarranted increases in rent" (*ibid.* § 4, subd. 2-b, as added by L. 1959, ch. 695). Plaintiff contrasts this generalized standard with that which controls the commission in fixing rents in other cases, in which event the commission is required to consider maximum rents for comparable housing accommodations, albeit such rents may be adjusted to accord with equitable factors (*ibid.* § 4, especially subds. 1 and 3).

It is concluded that the statute, as amended in 1959, is applicable to housing accommodations such as those owned by plaintiff. In short, the amendments are applicable to housing accommodations styled as hotels which do not satisfy the definition of hotels in the statute, even though such housing accommodations have not been subject to rent control since 1950, and even though such accommodations were once properly classified as hotels but have since deteriorated into something less.

First, one looks to the statute. In order for a hotel to be excluded from regulation as provided in section 2 (subd. 2, par. [b]) it must qualify as a housing accommodation which "on March first, nineteen hundred fifty, was and still is commonly regarded as a hotel in the community in which it is located and which customarily provides hotel services such as maid service, furnishing and laundering of linen, telephone and secretarial or desk service, use and upkeep of furniture and fixtures, and bellboy service, provided, however". The definition is in the conjunctive. In order to qualify a hotel must have been a hotel on two dates: on March 1, 1950, and now. Plaintiff's premises, therefore, are not excluded from the statutory language unless they constitute a hotel now. It is not enough that the premises may have been a hotel on March 1, 1950. Nor is it of any moment that the subdivision begins with the language "notwithstanding any previous order, finding, opinion or determination of the commission". This is a negative exclusion and does not serve as a description of or limitation on the class of accommodations thereafter described.

Plaintiff argues, however, that in construing the amendments one should look to the legislative history and, particularly, the report to the Legislature which led to their adoption. This report (1959 Report of Temporary State Comm. to Study Rents

and Rental Conditions, *supra*; N. Y. Legis. Doc., 1959, No. 45, p. 20) referred, in describing the proposed amendments, to the " recontrol of ' pseudo ' hotels ". It then described the necessity for voiding certain orders and opinions of the Rent Commission which had decontrolled certain accommodations since 1950 on representations, later proven false, that the accommodations had become hotels. Had the report stopped there, plaintiff might be entitled to rely upon its construction of the amendments and limit their effect to accommodations which were being recontrolled only after prior decontrol by the Rent Commission.

However, the report to the Legislature went on to provide that the commission would have the additional power to " recontrol " former establishments " that qualified as hotels which are currently not providing services customarily provided in hotels and have degenerated into rooming houses or worse. The restrictive definition of the term ' hotel ' will make it unnecessary for the commission to review any prior determination " (p. 20). While the repeated use of the word " recontrol " in this context is unfortunate, it is evident that the intention of the reporters was to confer upon the commission the power to regulate rents of " decayed " hotels as well as " pseudo " hotels. The further reference to review of any prior determination does not change the purport. That proviso, as the one contained in the amendments, is stated merely in the negative, meaning that the commission need not consider any prior determination, if there were one. It does not mean that there must have been such a prior determination in order for the commission to have jurisdiction over premises otherwise included in the definition of premises called a " hotel " but not qualifying as such. Moreover, there is no dispute that prior to 1950 hotels had been subject to Federal rent control, even if only for the purpose of being " decontrolled ", and under the State statute there was provision for reviewing Federal determinations in connection with providing continuity of regulation (see L. 1946, ch. 274, § 1; State Residential Rent Law, § 4, subd. 1).

Consequently, whether one examines the statutory language, or the report to the Legislature which preceded its enactment, it is evident that the 1959 amendments were intended to and had the effect of vesting the control of rents in the commission in purported hotels, no longer qualifying as such, whether or not they had been hotels, exempt or decontrolled, at some prior time during the life of the statute. Of course, as with other provisions of the statute controls are not imposed on housing accommodations created since March 1, 1950. Hence, the double-date requirement contained in the 1959 amendments.

Turning now to the constitutional attack on subdivision 2-b of section 4 of the State Residential Rent Law, a more serious question is raised. The subdivision reads as follows: " Provision shall be made pursuant to regulations prescribed by the commission for the establishment, adjustment and modification of maximum rents in rooming houses, which shall include those housing accommodations subject to control pursuant to the provisions of paragraph (b) of subdivision two of section two of this act, having regard for any factors bearing on the equities involved, consistent with the purposes of this act to correct speculative, abnormal and unwarranted increases in rent."

It is this subdivision which expressly confers upon the commission the power to fix maximum rents for hotels, " pseudo " or " decayed ", which it is empowered to regulate under the 1959 amendment to section 2 of the emergency law. Read in isolation, this provision confers on the commission the power to fix maximum rents based only on equitable factors. If that were all there were to the matter, the statute, as contended by plaintiff, might well be invalid. Reliance by the commission on *Bowles* v. *Willingham* (321 U. S. 503) and *Yakus* v. *United States* (321 U. S. 414) to sustain any such general standard is misplaced. The opinion in the *Yakus* case, which involved commodity price controls, referred expressly to the fact that the administrative agency was bound to look to prevailing prices during the base period as a standard for fixing prices. Similarly, the *Bowles* case turned expressly upon the fact that the administrative agency was bound to consider prevailing rents during the base period in the fixing of rents. The suggestion is made in the *Bowles* case (p. 513) that merely the general standard, namely, of fair and equitable rents, would not be sufficient. Thus, if the administrative agency is directed to do no more than apply generally equitable standards there would be an infirmity in the statute (cf. *Matter of City of Utica* v. *Water Pollution Control Bd.*, 5 N Y 2d 164, 168–169; *Packer Collegiate Inst.* v. *University of State of N. Y.*, 298 N. Y. 184).

But, as argued by the Attorney-General, subdivision 2-b may not be read in isolation. It is placed in section 4 of the act which also contains, immediately following subdivision 2-b, another subdivision, 3, which provides as follows: " Whenever the foregoing standard is not susceptible of application to a housing accommodation to which this act applies, and for which no maximum rent was established on March first, nineteen hundred fifty, or where no registration statement had been filed as had been required by the federal act, the maximum rent thereof shall be fixed by the commission, having regard to the maximum rents

for comparable housing accommodations or any other factors bearing on the equities involved, consistent with the purposes of this act." The "foregoing standard" to which reference is made is the maximum rents fixed under the predecessor Federal rent control laws, as of March 1, 1950. Consequently, if subdivisions 2-b and 3 are read together, there are sufficient legislative standards to guide the Rent Commission. Moreover, statutes are entitled to a presumption of validity and to a construction, if alternatively available, which will support constitutionality (*Kauffman & Sons Saddlery Co.* v. *Miller*, 298 N. Y. 38, 44; *Matthews* v. *Matthews*, 240 N. Y. 28, 34–35). Hence, the statute, if thus construed, may and should be sustained. Of course better draftsmanship would have avoided even the semblance of a question on this point.

Insofar as subdivision 3 is concerned, it has been before the highest court of our State on a number of occasions and no suggestion has been made that it suffered from any invalidity (see, e.g., *Matter of Austreal Corp.* v. *McGoldrick*, 305 N. Y. 848; *Matter of Staub* v. *McGoldrick*, 305 N. Y. 891). The subdivision was again before this court, after the *Austreal* case, although the question of validity was neither raised nor considered (*Matter of Felton* v. *Leo-Dor Realty Corp.*, 285 App. Div. 460, 463). The language in subdivision 3, in any event, is almost identical with that involved in the wartime statute sustained in *Bowles* v. *Willingham* (321 U. S. 503, *supra*). True, the provision contains the disjunctive " or " between the reference to the maximum rents for comparable accommodations and the equitable factors.* Nevertheless, the subdivision is invulnerable to attack if it is read to require, as it should be, that the Rent Commission is required to consider maximum rents for comparable housing accommodations in the first instance and that such comparable rents are only subject to adjustment by the other factors bearing on the equities involved.

---

* The predecessor provision to subdivision 3 was contained as an unnumbered paragraph in section 4 of the State Residential Rent Law, as enacted by chapter 250 of the Laws of 1950. The provision was substantially the same, but the disjunctive " or " was absent and, instead, the conjunctive " and " was in its place, and the clause " consistent with the purpose of this act " was not present. The change was made by chapter 443 of the Laws of 1951. The legislative reports cast no light on the reason for the change (N. Y. Legis. Doc. 1951, Nos. 28 and 53). This may be just another example of " and-or " confusion. The 1950 statute had been generally sustained as constitutional in *Teeval Co.* v. *Stern* (301 N. Y. 346).

The transposition of " and " and " or " in legal writing is, of course, a commonplace. (See, e.g., 3 C. J. S., " And ", p. 1068, and 67 C. J. S., " Or ", p. 517, and the many cases cited.)

The construction of the statute as last discussed is one continuously followed by the Rent Commission. In its regulations whenever the equitable factors are to be considered provision is made that they are to be applied only in adjustment of the maximum rents fixed for comparable housing accommodations (State Rent and Eviction Regulations, §§ 21, 33, 34, 36). With particular reference to fixing maximum rents for housing accommodations under the 1959 amendments, involved in this case, section 36 of the regulations provides as follows: "Where the Administrator finds that an establishment is no longer a hotel, he shall issue orders fixing maximum rents for the housing accommodations within such establishment which were not subject to rent control. The maximum rents so fixed shall be based upon the maximum rents for comparable housing accommodations taking into consideration all factors bearing upon the equities" (subd. [e]). Of course, it is established law that the construction and interpretation by an administrative agency of the statute under which it functions is entitled to the greatest weight (1 N. Y. Jur., Administrative Law, §§ 88, 89 and cases cited).

Consequently, the 1959 amendments to the statute in conferring power upon the Rent Commission to fix rents contain sufficient legislative standards and are valid. Since constitutionality of the statute was involved, the remedy of declaratory judgment was a particularly appropriate one and plaintiff is not confined to the statutory administrative procedure and the review provided by article 78 of the Civil Practice Act (*Rublick* v. *Weaver,* 9 Misc 2d 619, motion to dismiss denied 4 N Y 2d 881, affd. 4 N Y 2d 974; *Pitts* v. *McGoldrick,* 200 Misc. 150, 155–156, affd. 302 N. Y. 938).

Accordingly, the order and judgment denying defendants' and intervenor's motions for summary judgment and granting plaintiff such summary judgment should be reversed, on the law, the defendants' and intervenor's motions granted, and plaintiff's motion denied, with costs to defendants-appellants and intervenor-appellant.

VALENTE, McNALLY and STEVENS, JJ., concur.

Order and judgment (one paper) denying defendants' and intervenor's motions for summary judgment and granting plaintiff such summary judgment, unanimously reversed, on the law, the defendants' and intervenor's motions granted, and plaintiff's motion denied, with costs to defendants-appellants and intervenor-appellant. Settle order on notice.