In the Matter of MARTIN HERZOG, Respondent, v DANIEL W. JOY, as Commissioner of the Department of Rent and Housing Maintenance, Appellant.

First Department, May 15, 1980

APPEARANCES OF COUNSEL

*Alan W. Ginsberg* of counsel *(Harry Michelson,* attorney), for appellant.

*Joseph Gaier,* P. C., for respondent.

**OPINION OF THE COURT**

Sullivan, J.

Two sisters, Marilyn and Laura, occupied an apartment at 64 MacDougal Street in New York City until 1973, when Marilyn, who had taken occupancy in 1967, married and took up a new residence. In 1972 Laura, then in high school, had moved in with her older sister. Laura is presently the sole occupant, but Marilyn, who occasionally uses the apartment to work on her art designs, continued to pay all the rent, as well as the telephone and utility bills.

In 1976 the landlord applied for decontrol, claiming that since the tenant, Marilyn, maintained her primary residence elsewhere, decontrol was mandated pursuant to chapter 21 (§ 1, subd 5) of the Laws of 1962 (Local Emergency Housing Rent Control Act, § 5) and section 18 of the New York City Rent, Eviction, and Rehabilitation Regulations. The application was denied. The District Rent Director and the Rent Commissioner, on protest, each found that the apartment did not qualify for primary residence decontrol because it was not underutilized and was the primary residence of the tenant in possession, Laura.

In the ensuing article 78 proceeding, Special Term, finding Laura to be a mere licensee and not a tenant in possession, directed the issuance of an order of decontrol, from which determination the Rent Commissioner has appealed. We reverse.

Chapter 21 (§ 1, subd 5) of the Laws of 1962 was amended by section 2 of chapter 373 of the Laws of 1971, effective May 1, 1972 to provide: "[N]o local law or ordinance shall subject to such regulation and control any housing accommodation *which is not occupied by the tenant in possession as his primary residence;* provided, however, that such housing accommodation not occupied by the tenant in possession as his primary residence shall continue to be subject to regulation

and control as provided for herein *unless the city housing rent agency issues an order decontrolling such accommodation,* which the agency shall do upon application by the landlord whenever it is established by any facts and circumstances which, in the judgment of the agency, may have a bearing upon the question of residence, that the tenant maintains his primary residence at some place other than at such housing accommodation." (Emphasis added.) Subdivision a of section 18 of the City Rent Regulations, which was the basis of the decontrol application, states: "Upon application of the landlord, the Administrator shall issue an order decontrolling a housing accommodation where he finds that the tenant in possession maintains his primary residence at some place other than at such housing accommodation."

The purpose of the primary residence decontrol law was to alleviate the shortage of housing in New York City by returning underutilized apartments to the market place. (See Memorandum of the State Executive Department, McKinney's 1971 Sess Laws, vol 2, p 2403.) In approving the law the Governor took note of the unfairness in the use of controlled apartments by parttime and absentee tenants:

"Thousands of controlled apartments in New York City and elsewhere are rented by people who do not live in them. They use the apartments as a convenience, staying in them occasionally when they come to the City. Some even use them for storage. Continued controls on the apartments, indirectly subsidizing them through reduced real estate taxes, and keeping them off the market, is one of the worst inequities of rent control.

"The bill will remedy this situation by authorizing the State (or the City of New York with respect to apartments in the City), to decontrol these units after May 1, 1972, upon a finding that they are indeed not the real home of the tenant." (McKinney's 1971 Sess Laws, vol 2, p 2609.)

On the facts disclosed here, it is clear that the apartment is not underutilized, since it is the primary residence of Laura. The issue, however, is whether Laura, who, concededly, did not pay rent and who succeeded to sole occupancy when Marilyn vacated, is a tenant within the meaning of the rent control law.

In finding that Laura was not a tenant, Special Term relied

upon the fact that she did not pay rent, either to the landlord or to her sister. Subdivision m of section Y51-3.0 of the Administrative Code of the City of New York (City Rent and Rehabilitation Law) and subdivision o of section 2 of the City Rent Regulations, however, define "tenant" as: "A tenant, subtenant, lessee, sublessee, *or other person entitled to the possession or to the use or occupancy of any housing accommodation.*" (Emphasis added.) This broad statutory and regulatory definition of "tenant" antedates the enactment of primary residence decontrol, as does the identical definition of "tenant" contained in subdivision 8 of section 2 of the Emergency Housing Rent Control Law (L 1946, ch 274, as amd) and subdivision 7 of section 2 of the State Rent and Eviction Regulations.

█ █ Thus, the word "tenant", as used in rent control, has a much broader application than the limited meaning ascribed to it by Special Term. It should not, in the absence of a contrary meaning unmistakably intended, be given an interpretation contrary to its technical or special meaning when applied to the primary residence decontrol law. (See McKinney's Cons Laws of NY, Book 1, Statutes, § 233; see, also, *People v Wainwright,* 237 NY 407, 412.) Furthermore, an administrative agency's construction and interpretation of its own regulations and of the statute under which it functions is entitled to the greatest weight. *(Hotel Armstrong v Temporary State Housing Rent Comm.,* 11 AD2d 395, 402; see, also, *Matter of Pell v Board of Educ.,* 34 NY2d 222; CPLR 7803, subd 3.) Consequently, that Laura does not personally pay rent is not determinative of her status as a tenant within the ambit of rent control.

Subdivision a of section 56 of the City Rent Regulations mandates the issuance of a certificate of eviction "where the landlord seeks in good faith to recover possession of housing accommodations for which the tenant's lease or other rental agreement has expired or otherwise terminated, and at the time of termination the occupants of the housing accommodation are subtenants or other persons who occupied under a rental agreement with the tenant, and no part of the accommodations is used by the tenant as his dwelling."

Subdivision d of section 56 of the same regulations, however, bars eviction where the remaining occupant is a surviving spouse or other member of the tenant's family who has been

living with the tenant.* Although subdivision d of section 56 speaks of family members of a "deceased" tenant, its protection has been extended to those family members who lived with a voluntarily vacated primary tenant. *(Matter of Goodman v Ross,* 274 App Div 811; *Matter of Waitzman v McGoldrick,* 20 Misc 2d 1085; *Matter of Bierer v Abrams,* 20 Misc 2d 1085.) Moreover, "member of the * * * family" includes relatives more distant than siblings. *(Matter of Waitzman v McGoldrick, supra.)*

Thus, Laura cannot be evicted under section 56 of the City Rent Regulations since she is entitled to possession by virtue of her relationship to, and contemporaneous occupancy of the apartment with Marilyn, the original tenant, irrespective of who pays the rent, as long as it is paid.

As already noted, Laura has been in sole possession on a full-time and permanent basis since 1973. The apartment is her primary residence and is not underutilized. No claim has been made that Laura's occupancy is a subterfuge to protect Marilyn's continued possession. Laura is clearly in occupancy, and her rent was paid by Marilyn, because, at least up to the time of the administrative proceedings, she did not have regular employment. Thus, the requirements of subdivision a of section 18 of the Rent Regulations have not been met. A certificate of decontrol may issue only when the tenant in possession does not use the apartment as a primary residence. (See *Matter of Goodman v Ross,* 274 App Div 811, *supra.)* Moreover, subdivision a of section 18 and section 56 of the Rent Regulations should be interpreted compatibly to prevent a landlord from accomplishing indirectly under subdivision a of section 18 what he is prohibited from doing directly under section 56.

In *Matter of Veltri v Joy* (55 AD2d 529, affd 43 NY2d 660), this court upheld the determination of the commissioner that the landlord was not entitled to decontrol even though the occupant was neither the original tenant nor a member of the tenant's immediate family. We pointed out that the apartment was not underutilized, and noted approvingly that the tenant in possession occupied the apartment for a period of time with the tenant with whom the landlord was in privity. Similarly,

---

* "No occupant of housing accommodations shall be evicted under this section where the occupant is either the surviving spouse of the deceased tenant or some other member of the deceased tenant's family who has been living with the tenant."

here, Laura was an occupant of the apartment while Marilyn still resided there. More importantly she is a close relative.

In conclusion, the test of tenancy under primary residence decontrol is not whether the apartment is occupied by the tenant of record who initially signed the lease but whether it is occupied by the person entitled to possession. The commissioner's determination was neither arbitrary nor capricious.

Accordingly, the order and judgment (one paper), Supreme Court, New York County (MYERS, J.), entered February 26, 1979, which granted the petition to set aside and vacate respondent's determination that the subject accommodation does not qualify for decontrol pursuant to section 18 of the Rent Regulations, should be reversed, on the law, without costs or disbursements, the petition dismissed and the determination reinstated.

SANDLER, J. P., ROSS, MARKEWICH and CARRO, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on February 26, 1979, unanimously reversed, on the law, without costs and without disbursements, the petition dismissed, and the determination reinstated.