Asch, J.
(dissenting). In my opinion, this court should affirm Judge Wilk’s dismissal and hold that, under the peculiar facts of this case, to oust Ms. Weiss would be violative of section 296 of article 15 of the Executive Law (Human Rights Law).
Preliminarily, landlord argues that section 296 has no application to a situation where the marital status of the apartment occupants changes after the rental term has begun. Although this position is not entirely untenable, I would hold to the contrary. Adopting landlord’s construction would, in my view, be to hew to an overly technical reading of article 15 of the Executive Law (Human Rights Law). Section 300 of that statute mandates that the Human Rights Law is to be liberally construed. Therefore, I would opt for an interpretation which would encompass a case where the marital status discrimination occurs after the initial leasing.
Furthermore, the very language of section 296 (subd 5, par [a], cl [1]) speaks of a refusal to “sell, rent, lease or otherwise to deny to * * * any person *** because of * * * marital status” (emphasis added). These statutory phrases, read in the light of the command that the Human Rights Law be liberally construed (see Executive Law, § 300) mean, to my mind, that in a case like the one presented here, where discrimination takes place after the initial leasing the proscriptions of section 296 are fully operative.
Moreover, to adopt landlord’s construction of section 296 would leave a gaping and illogical lacuna in the Human Rights Law. If (as its sparse legislative history indicates) the purpose of section 296 was to provide unmarried *596 couples an unimpeded opportunity to obtain housing, it would stand to reason that the Legislature would have wanted the protections of that section to remain in force even after the commencement of the lease. Consequently, an attempt to oust a tenant because of a change in the marital status of the partners occupying her apartment should be judged in the same light as would be a threshold refusal to rent.
I find unpersuasive the remonstrances by landlord that the lower court’s decision has the effect of nullifying a landlord’s right to pass upon and approve those who are to occupy his premises. Certainly, the existing lease clause restricting occupancy to close family members impinges to a large degree on a landlord’s veto over those who are to share in the premises. A close family member may be just as objectionable as an unrelated party deciding to share a house with an unmarried mate. But, as the court noted below, all things being equal, discrimination on the basis of marital status is precisely what section 296 of the Executive Law proscribes. In short, that the objectionable occupant is unrelated by marriage to tenant may not, consistent with article 15 of the Executive Law (Human Rights Law), be used as a predicate for ouster.
Landlord’s final challenge to the dismissal of its petition focuses on the rent-controlled status of the premises in dispute. It was never the intent of the Legislature, argues landlord, to extend the benefits of those laws to lovers. To the contrary, contends landlord, the statutory structure reveals a clear bias in favor of bestowing rent advantages on the families and spouses pf rent control tenants. Prime reliance is placed by landlord on section 56 of the Rent and Eviction Regulations of the City of New York which states that where a tenant no longer occupies his apartment, a certificate of eviction may issue, except when the remaining occupant is either the surviving spouse or some other member of the deceased’s tenant’s family. Case law also betrays a pro-tenant bias. (See Matter of Herzog v Joy, 74 AD2d 372 [where tenant of rent-controlled unit vacates apartment family members and spouses are entitled to continue reaping benefits of rent control laws].)
*597 While these regulations do show a pro-family bias, they have no role to play under the facts of this case. Tenant Weiss has neither died nor vacated unit 15H. The Human Rights Law permits Wertheimer to occupy the apartment. Hence, he falls within the broad definition of tenant spelled out in subdivision m of section Y51-3.0 of the Administrative Code of the City of New York (Rent and Rehabilitation Law) and is entitled to continue residing in the apartment. Whether, if Ms. Weiss left the apartment, Wertheimer could maintain his possession is a knotty question which need not be addressed here. For purposes of this case, it is sufficient to note that under section 296 of the Executive Law, Ms. Weiss and Wertheimer are completely within their rights in staying in apartment 15H.
As a postscript, it should be noted that the grounds for the dissent are fairly narrow. Concededly, the occupants of the apartment “maintain a close and loving relationship”. Yet, it is indisputable that the landlord required a formal marriage as the essential condition for continuing the tenancy. The marriage certificate does not always supply a litmus test for love. Further, under the Human Rights Law, it cannot serve as the key which opens the door to the tenancy of an apartment.
The landlord still has ample discretion to select and reject tenants provided that he does not use categories interdicted under the law, such as, marital status, in screening their suitability.
I would affirm the lower court’s dismissal of the petition.
Concur: Tierney, J. P., and Riccobono, J.; Asch, J., dissents in a separate memorandum opinion.