■ Rose Becker, as Temporary Receiver of the Speedwell Services for Children, Inc., Appellant-Respondent, v Edward I. Koch, as Mayor of the City of New York, et al., Respondents-Appellants. — Order, Supreme Court, New York County (David Saxe, J.), entered February 1, 1983 unanimously modified, on the law, without costs, to grant plaintiff partial summary judgment in the sum of $6,644, representing the withheld portion of adoption grants conceded to be owed to plaintiff by the city, and to grant partial summary judgment to the city dismissing the remainder of plaintiff's adoption expense claim, and to grant plaintiff partial summary judgment in an amount to be computed in the order to be settled, representing withheld per diem allowances for services rendered by Speedwell prior to June 30, 1976, and otherwise affirmed. ¶ Plaintiff is the temporary receiver of Speedwell Services for Children, Inc. (Speedwell), a now-defunct, private, nonprofit foster care agency founded in 1902. As pertinent on this appeal, the action alleges that New York City breached in two respects its June 18, 1975 "Purchase of Child Care Services" contract with Speedwell. First, it is claimed that the city improperly withheld from Speedwell moneys due it under the contract to the extent to which adoption grants received by Speedwell from the city were not demonstrated to have been allocated to adoption-related purposes. Second, it is alleged that the city improperly withheld reimbursement of portions of Speedwell's expenses under the supposed authority of the New York State Financial Emergency Act for the City of New York (FEA; L 1975, ch 868, § 2). ¶ Speedwell appeals from Special Term's order insofar as it denied Speedwell partial summary judgment for $89,706 (the adoption expense claim) and dismissed Speedwell's claim for $101,135.16 withheld under the supposed authority of the FEA. The city cross-appeals from the order insofar as it denied the city's cross motion for partial summary judgment to dismiss Speedwell's $89,706 adoption expense claim. Speedwell and the city agree that there are no factual issues, and that the appeal should be decided upon the undisputed facts, the contract, and the applicable statute, Comptroller's conditions and city regulations. ¶ Addressing first the adoption expense claim, the issue derives from a distinction between the conditions applicable to flat-rate adoption grants and per diem allowances per child for foster care expenses as provided in the Comptroller's Terms and Conditions Governing Payments to Charitable Institutions (Comptroller's Conditions) and the Regulations and

Instructions Governing the Administration of Reimbursement by the City of New York to Voluntary Foster Care Agencies and Institutions (the City Regulations). Both the City Regulations and the Comptroller's Conditions essentially provide that foster care agencies such as Speedwell are to be paid on an interim basis for its foster care services at a specified per diem rate for each child based upon the agency's census and expense projections. At the end of the year, a final earned amount was calculated for the year based upon an annual report submitted by the agency. If the agency had been underpaid at the interim rate (as compared with the calculated "final per diem reimbursement rate") it was to receive additional funds to reimburse it for its expenses, and vice versa. ¶ In contrast to the aforesaid provisions relating to the establishment of per diem child care rates, the City Regulations and Comptroller's Conditions provided for a lump-sum adoption grant of $1,400 in fiscal year (FY) 1974-1975, and $1,750 in FY 1975-1976. In order to receive such grants in the first instance the agency was required to notify the city that it had placed a child in a home for adoption. The city, upon audit for FY 1974-1975, FY 1975-1976 and July and August, 1976 disallowed substantial portions of the grants in issue here because Speedwell was unable to demonstrate that the funds previously received had been allocated to and used for adoption-related purposes. ¶ Speedwell contends that there is no rule, condition or regulation that requires such funds to be so used for adoption-related expenses, and that the grants were inducements to it and other agencies to facilitate adoptions, exempt from any obligation to allocate to adoption-related expenses. Although the issue is not free from doubt, a study of the controlling regulations and Comptroller's Conditions discloses strong support for the city's position. ¶ The City Regulations referred to above, apparently the central relevant administrative document, are of critical importance. Section VI is entitled "LIST OF ITEMS FOR WHICH SEPARATE CITY PAYMENTS WILL BE MADE", and provides: ¶ "In addition to the comprehensive per diem per capita rate to be paid by the City in accordance with this procedure, the City will continue, as herebefore, to make separate and additional payments for the following items of expenditures only * * * ¶ "c) *Adoption*. To agencies for disbursements in placing and supervising children in homes for adoption. Payments will be in accordance with regulations prescribed by the Conditions Governing Payments to Charitable Institutions and the standards set forth in the BCW Inter-Agency Manual." ¶ Consistent with this provision of the City Regulations, clause E of paragraph 16 of the Comptroller's Conditions for the relevant years, setting forth the yearly allocation grant per child, precedes that figure with the following words: "For disbursement in placing children in homes for adoption, per child". A general "Note" applicable to all appropriations in the Comptroller's Conditions provides: "1. The accounts and records of all such institutions shall be kept so as to show their receipts and expenditures pertaining to all institutional activities, and a record shall be maintained in which their expenses shall be recorded under the various classifications in the form required by the Comptroller of the City of New York and as far as practicable such accounts and records shall be kept on an income and expense basis." ¶ The Comptroller and the Human Resources Administration (Department of Social Services, Special Services for Children) have construed the aforesaid Comptroller's Conditions and City Regulations as requiring voluntary child care agencies to demonstrate the expenditure of adoption grants for adoption-related disbursements as a condition for retaining moneys paid for such purposes, a construction which we find reasonable particularly where, as here, we are considering payments made to a nonprofit institution. "It is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld." (*Matter of Howard v Wyman,* 28

NY2d 434, 438; see, also, *Matter of Herzog v Joy,* 74 AD2d 372, 375.) Under these circumstances, and with both parties urging that there are no factual issues requiring a trial, we conclude that partial summary judgment should be granted to the city dismissing Speedwell's adoption-related expense claim, except for the sum of $6,644 which the city concedes it owes to Speedwell, and as to that sum Speedwell should be granted partial summary judgment. ¶ Turning to the claim for additional reimbursements withheld under color of the FEA for FY 1975-1976 and July-August, 1976, we conclude that the FEA was not applicable to the contract period July 1, 1975 to June 30, 1976 (FY 1975-1976). Section 7 (subd 1, par e) of the FEA provides that it is applicable to "all contracts or other obligations to be entered into by the city or any covered organization after October thirty-first, nineteen hundred seventy-five, requiring the payment of funds by the city or any covered organization". *Matter of Subway-Surface Supervisors Assn. v New York City Tr. Auth.* (44 NY2d 101), relied on by the city to support Special Term's application of the FEA to bar Speedwell's entire claim, is clearly distinguishable. In *Subway-Surface* the contract between the parties was executed on or about October 1, 1974, but provided for wage increases and an increase in shift differential pay for members of the petitioner labor union to become effective October 1, 1975. Subdivision 1 of section 10 of the FEA specifically imposed a freeze with regard to wage increases or increases in shift differentials that were to become effective after June 30, 1975, and thus the FEA was clearly applicable to freeze the October 1, 1975 increases. ¶ The contract in this case covered a one-year period ending June 30, 1975, and provided that it was renewable for yearly periods commencing July 1 and continuing through June 30 of the following year. As stated previously, the FEA did not by its terms apply to the contract period commencing on July 1, 1975. However, the FEA did apply to the contract period July 1 through August 31, 1976 when Speedwell ceased operations. Accordingly, the order appealed from is modified to grant Speedwell's motion for partial summary judgment on its third claim only insofar as it covers the period ending June 30, 1976. ¶ Settle order. Concur — Murphy, P. J., Sandler, Carro and Milonas, JJ.