OPINION OF THE COURT
Elliott Wilk, J.*
Plaintiff moves for summary judgment. Defendant Chemical Bank cross-moves for summary judgment dismissing the complaint.
Plaintiff John B. Bell, appearing pro se, brought this action against the New York Higher Education Assistance Corporation (actual name is New York State Higher Education Services Corporation [NYSHESC]), Chemical Bank and New York Law School for damages he allegedly sustained when his student loan was submitted for payment to NYSHESC prior to Bell’s completion of his law school studies. As a result, Bell was unable to finance the completion of his law school career.
The action against New York Law School (NYLS) was previously dismissed as time barred. The action against NYSHESC was recently dismissed for lack of subject matter jurisdiction.
The course of events leading up to the default of Bell’s loan is not in dispute.
Mr. Bell commenced his studies as a full-time day student at NYLS in the fall of 1975, under a full-tuition scholarship. At that time, he applied for, and subsequently received, a guaranteed student loan from Chemical to finance the remainder of the school year. Bell had taken student loans from Chemical since 1968 for undergraduate studies. The last promissory note (known as form HE-700) was signed by Bell in January 1977.
The promissory note, by its express terms, was to mature and become due nine months after Bell ceased to be a matriculated student, became less than a half-time student or failed to verify his status with NYSHESC. This nine-month period is known as the "grace period”.
On the back of the HE-700 promissory note is a "Statement of Responsibilities” in which the borrower agrees to notify NYSHESC immediately upon any relevant change in student status, and emphasizes, without reference to any grace period, that the mere failure to report the change in status will also result in the immediate maturity of the note.
*938 Due to financial difficulties, Bell requested and received a leave of absence from NYLS effective June 1977. Bell did not return to NYLS until the spring term of 1979, when he attended classes on a part-time basis.
During the period from June 1977 until June 1979, neither NYSHESC nor Chemical were notified of Bell’s leave of absence. Bell never executed an HE-800 "Promissory Note and Disclosure Installment”, as required by the terms of the promissory note, which would have set up a schedule of payment of the loan following the nine-month grace period, nor did he ever make any payments on the loan.
On June 8, 1979, Chemical was notified by NYSHESC (form HE-1380) that Bell had last met the "in-school” requirements of at least six credit hours per term in the spring of 1978. (Subsequently, NYSHESC sent a corrected HE-1380 informing Chemical that Bell had actually last met in-school standards in May 1977.) As a result, Bell’s promissory note had matured and become due on February 28, 1978.
In response to this late verification of Bell’s status, Chemical filed an "HE-1100” "Advise on Default and Claim for Reimbursement” with NYSHESC on June 15, 1979.
On June 29, 1979, NYSHESC acknowledged receipt of the HE-1100 and notified Bell of the overdue status of his loan, and advised Bell to contact his lender immediately. During July 1979, Bell contacted Chemical twice, and NYSHESC at least once to contest NYSHESC’s determination concerning his student status. Bell contends that his leave of absence is not a withdrawal from school pursuant to the terms of the promissory note. Bell intended to continue with his law school studies and wished to reapply for further loan funds.
On July 25, 1979, NYSHESC advised Chemical by letter that it was authorized to continue Bell’s loan, but that the loan would remain in "pre-default” until Bell paid the interest due to date. By letter dated August 1, 1979, Chemical billed Bell $769.54.
Bell visited Chemical’s office on August 13, 1979 and agreed to pay the interest, although he still disputed the status determination which had been made.
Bell claims that Chemical’s loan representative gave him a 10-day ultimatum in which to pay the interest before the loan would be reimbursed by NYSHESC. By a letter dated August 21, 1979, Bell admitted that he was required to pay the interest due, and requested that "some arrangement” be made *939 to pay the interest before the 1980 spring term. Mr. Bell had already received yet another leave of absence for the fall 1979 term.
Chemical responded by a letter dated August 28, 1979 informing Bell that he would not be approved for any further loans until he paid the interest due, and advised him to do so immediately to avert the default of the outstanding loan. Bell never paid the interest, and NYSHESC purchased the loan on October 19, 1979.
Bell demands summary judgment against Chemical on his action for breach of contract. He claims that there are no questions of material fact which warrant trial on the following issues: (1) that Chemical breached the contract by erroneously classifying Bell as having withdrawn from school; (2) by prematurely filing the HE-1100 with NYSHESC in violation of NYSHESC’s regulations as to procedures to be followed prior to filing the claim; and (3) by failing to comply with its own standards of reasonable practice by giving Bell a 10-day ultimatum in which to repay the interest due.
Bell’s first claim, that his official leave of absence cannot, in law, be designated as a withdrawal from school under the terms of the promissory note, is directly contradicted by the clear language of the note and the accompanying statement of responsibility.
Paragraph III of the note states that the note matures at the end of the ninth month following the month the borrower ceases to be matriculated or becomes less than a half-time student (defined as six semester hours in an accredited institution). The note also will become due immediately at the option of the holder or NYSHESC if the borrower fails to verify his or her status as a student when requested. (Para III [2].)
Paragraph I of the statement of responsibility emphasizes the necessity for the borrower to inform NYSHESC immediately as to any changes in student status.
It is unclear from the record whether Bell ever properly notified NYSHESC or Chemical that he had changed his student status (students are automatically sent a form for this purpose every six months. Bell, in his complaint, claims to have sent these forms to NYLS, not to NYSHESC), but it is beyond dispute that Bell was not attending even the minimum number of class hours required to maintain his "in-school” status under the terms of the note. Bell took no classes at all for nearly 1 Vi years.
*940 In chapter IV, section K (1) of the Guaranteed Student Loan Program Handbook (Handbook) (issued by NYSHESC as a guide to NYSHESC procedures) the definition of "withdrawal from school” specifically includes an "official leave of absence” which will subject the loan to the maturity terms of the promissory note (HE-700).
It is clear that Bell was not "in-school” for the purposes of the promissory note from June 1977 to at least January 1979.
Consequently, Bell was in breach of the express terms of his contract with Chemical (i.e., the promissory note) in that he failed to report his student status to NYSHESC and Chemical, and failed to execute the promissory note and disclose installment HE-800, and failed to make any interest payments thereafter. The note matured and became due in February 1978.
The second aspect of Bell’s claim, concerning Chemical’s alleged premature filing of the HE-1100, is without merit.
NYSHESC’s Handbook sets forth a requirement that a lender must use reasonable care and diligence in the making and collecting of loans (ch II-2), and suggests procedures for diligent collection practices which include the requirement that the lender document its collection efforts before NYSHESC will pay the claim (chs II-2, VII).
A claim for payment of an overdue loan is made by filing the HE-1100 "Advise of Default and Claim for Reimbursement”.
The purpose of the HE-1100, as expressed in the Handbook, is to notify NYSHESC that the student has not met his or her responsibilities, and that the lender intends to present the loan for purchase in the event of the student’s default. (Appendix B, B-l.)
The HE-1100 does not effectuate the default. It places the loan in a "pre-default” status and triggers a series of procedures aimed at correcting the default, if possible.
The nature of the collection procedures which follow the filing of the HE-1100 are set forth in chapter VII of the Handbook, entitled "Preclaim and Claim Assistance.”
By its own definition of purpose, the Handbook was intended only for distribution to lenders and schools, and describes the procedures to be followed by those lenders and schools in order to "effectively carry out the program” of NYSHESC. The strong indication is that the procedures re *941 quired of lenders in administering their loans to students were intended to insure that NYSHESC will only be required to reimburse a lender for a loan after every effort has been made, with all due diligence, to correct the default. There is no indication that the collection procedures outlined were created to benefit the borrowers themselves, as Bell believes, although that might be one effect of the regulations.
Thus, it is not at all certain that Bell can claim the protection of the Handbook’s guidelines. Even if the guidelines apply, the facts make clear that Chemical did not file the HE-1100 prematurely, and subsequently pursued the correction of Bell’s default with due diligence and in a reasonable manner.
According to chapter VII of the Handbook, different kinds of defaults are to be handled in different manners. When a lender is made aware of a change in student status at an early time, it can contact a student prior to the maturing of the note, and prior to the filing of an HE-1100. (Ch VII-1.) Accordingly, the lenders’ documentary proof of collection efforts accompany the HE-1100 in these cases.
Similarly, when a student borrower has previously signed an installment agreement, and has commenced some payment on the loan, the lender will be immediately aware of the default in payment, and can respond by contacting the borrower with "due diligence”.
Due diligence in the context of collection is defined as "collection practices no less extensive and forceful than those generally used by financial institutions, exploring all avenues of collection short of legal action, prior to filing claims”. (Ch II-2.)
But the Handbook also requires that when a student has failed to sign the installment note HE-800, and where the lender has received late notification of the borrower leaving school, the HE-1100 is to be filed "immediately”, and the borrower notified.
In this case, the lender was notified of Bell’s student status nearly two years after Bell had ceased attending classes at NYLS. The lender filed the HE-1100 "immediately” as called for by NYSHESC’s regulations, and subsequently contacted the borrower, as required by NYSHESC.
As Chemical’s action in filing the HE-1100 immediately upon late notification of Bell’s status conforms with NYSHESC’s express regulations, there is no question of fact concerning the timeliness of the making of the claim.
*942 In addition, Chemical’s subsequent conduct conformed to the due diligence requirements of the NYSHESC Handbook.
Certainly NYSHESC found no fault in the procedures followed by Chemical, including the filing of the HE-1100 without prior lengthy contact with the borrower. It is well established that the interpretation of an agency of its own regulations is to be accorded great weight. (Matter of Herzog v Joy, 74 AD2d 372, 375 [1st Dept 1980], affd 53 NY2d 821 [1981].) In the present case, NYSHESC obviously found Chemical’s actions, both prior to and following filing of the claim, to be correct.
Both NYSHESC and Chemical contacted Bell on several occasions. Bell was apprised of his options and given ample time to comply (nearly three months intervened between Bell’s first notification and the purchase of his loan).
No credit can be given Bell’s contention that he was faced with an unreasonable 10-day ultimatum in which to pay the interest. The letter from Chemical dated August 28, 1979, written 15 days after the alleged ultimatum, clearly evidences Chemical’s willingness to allow Bell to correct his default without any unreasonable time restraints.
Chemical Bank did not breach its contract with the plaintiff by prematurely filing a claim with NYSHESC to be reimbursed for the loan. Clearly, there is no question of material fact concerning Bell’s default of the loan at least lVz years before he was notified by Chemical and NYSHESC of his predefault status. He was, thereafter, afforded ample opportunity by both NYSHESC and Chemical to return the loan to good standing. This he simply failed to do.
Accordingly, plaintiff’s motion for summary judgment is denied and Chemical’s motion for summary judgment dismissing the complaint is granted.

 I acknowledge the assistance of Linelle Hunter in the preparation of this opinion.