OPINION OF THE COURT
Lewis R. Friedman, J.
In this proceeding under the Election Law, petitioner, an enrolled Democrat and an aggrieved candidate, seeks an order directing that the registration and enrollment of the respondent Israel Ruiz, Jr. be canceled.
Respondent questioned the propriety of service and raised issues of law on the validity of this proceeding. The questions concerning service were referred to Special Referee John Buckley to hear and report. An oral motion to confirm the report of the Referee and argument on the legal questions were heard by the court.
This proceeding does not involve whether respondent is eligible to be nominated nor any of the other issues presented in the companion proceeding filed by petitioner to challenge Mr. Ruiz’s petitions for the Democratic nomination for the Office of State Senator from the 32nd District. Those questions will be determined in that proceeding after the Special Referee has reported and counsel have been heard. This petition involves solely the question of whether the court should direct the cancellation of Mr. Ruiz’s registration, or alternatively, should issue an order directing the Board of Elections to act expeditiously. Petitioner asserts that the cancellation of the registration and enrollment would make the nominating petitions defective (Election Law § 6-120 [1]). That is not, however, the law. The determination of whether a candidate is properly enrolled and registered is made as of the day the nominating petition is filed (Election Law § 6-120; Matter of Engel v Board of Elections, 143 AD2d 291, 292, lv denied 72 NY2d 805; Nesci v Canary, 112 AD2d 1056, 1057, lv denied 65 NY2d 607). Cancellation of enrollment and registration is prospective only (Matter of Weber v Power, 22 NY2d 321; Matter of Leaks v Gill, 123 Misc 2d 342, 346).
OBJECTIONS TO SERVICE
The findings of the Special Referee are confirmed. There *812 was, concededly, proper and timely service by "mail and nail.” The only issue is whether that was the method of service directed by the order to show cause. In proceedings under the Election Law the manner of service provided for in the order to show cause is jurisdictional and must be followed (see, e.g., Matter of Sahler v Callahan, 92 AD2d 976, 977; Matter of Caralyus v Hayduk, 72 AD2d 590). Even service giving "better” notice than that directed in the order is insufficient (Matter of Bruno v Ackerson, 51 AD2d 1051, affd 39 NY2d 718).
In this case the order to show cause contains an obvious typographical error. In addition to personal delivery, the order provides for "affixing to the outer door” or serving "a person of suitable age and discretion” and "nailing a true copy to such respondent at his address as shown on the designating petition.” The court finds the word "nailing” to have been typed in error and the word "mailing” intended. As the Special Referee aptly noted, the order could not be construed to allow "nailing” and "affixing” to constitute proper service. Of course, it is also clear that the order did not anticipate "nailing a true copy to respondent,” as a literal reading would require.
A spelling error should not vitiate proper service. The court finds that service was properly made as required by the order to show cause.
DOES THIS PROCEEDING LIE
The operative facts do not appear to be in dispute. Respondent Israel Ruiz, Jr. is an enrolled member of the Democratic Party. On or about May 10, 1989 Mr. Ruiz was convicted in Federal court of violating 18 USC § 1014, a Federal felony, which appears to be a misdemeanor under New York law. On July 20, pursuant to Election Law § 5-220, petitioner completed an affidavit challenging Mr. Ruiz’s registration. The grounds for that application are that pursuant to Election Law § 5-106 (3) a person convicted in Federal court of a felony is disqualified from voting and, therefore, his registration must be canceled pursuant to Election Law § 5-400 (3). On July 25, petitioner swore to his challenge affidavit before the Board of Elections (Election Law § 5-220). On July 31 the Board of Elections mailed a notice of investigation to Mr. Ruiz. The Board of Elections is investigating the challenge.
Respondent Ruiz contends that this proceeding is prema *813 turc, since it was commenced July 14, prior to the exhaustion of the administrative remedies; indeed, it was commenced before petitioner swore to his challenge affidavit.
The Election Law provides a detailed, step-by-step procedure for the cancellation of a registration. Section 5-220 (1) requires (1) an objector to swear to an affidavit before the Board; (2) notice to the voter, within five days of the challenge affidavit; (3) a "forthwith” investigation of the registration; and (4) placing the voter’s name on the challenge list if the decision is not reached before the next election. The investigation required is apparently that set forth in section 5-702. The Board may, in the alternative, on its own motion, commence a cancellation proceeding "[w]henever the board has reason to believe that a registered voter is no longer qualified to vote”. (Election Law § 5-402 [2].) That proceeding requires a 14-day notice to the voter.
The statutory structure of the proceedings to cancel a registration provides a reasonable balance between the rights of the registered voter to remain on the ballot and the rights of the public to see that only proper voters participate in electoral proceedings. Disenfranchisement is not to be imposed without due process. The proceedings before the Board are to be expeditious in a matter providing for effective administration of the system.
Respondent argues that the court may not act until there has been an exhaustion of administrative remedies. In Matter of Holzberger v Schoentag (55 Misc 2d 683) the court followed those principles and found that the administrative procedure to cancel registration must be allowed to run its course before any judicial action may be brought. The court held that proceedings before the Board of Elections were conditions precedent to judicial action.
Petitioner, on the other hand, argues that this court should proceed without regard to the matter pending before the Board. Section 16-108 (1) provides that the Supreme Court "shall, by order, direct the cancellation of the registration of any person who shall unlawfully be registered”. That section and its companion relating to enrollments (§ 16-110) permit direct application to the court for relief. Indeed, direct court challenges have long been permitted. (See, e.g., Matter of People v Gates, 196 Misc 770; Matter of People v Davis, 196 Misc 886.) The plain reading of sections 16-108 and 16-110 show a legislative decision that the court may rule without *814 regard to administrative proceedings. The Legislature would not have enacted those two sections if the procedure under section 5-220 were exclusive. Indeed, section 16-110 permits filing a court proceeding as late as "the second Friday before a primary election”. That is strong proof that the Legislature anticipated independent applications to the court. This court agrees with Matter of Leeks v Gill (123 Misc 2d, supra, at 346) that section 5-220 is not the exclusive method of judicially canceling a registration. Therefore, Matter of Holzberger v Schoentag (supra) should not be followed.
The availability of a direct judicial remedy is not the complete answer to the procedural questions presented. The court must determine whether it should, in the exercise of discretion, permit the administrative process to be completed. The cancellation of a voter’s registration for conviction of a felony is not automatic (Matter of Engel v Board of Elections, 143 AD2d, supra, at 292). The Board is proceeding as required by statute and has not refused to act or unreasonably delayed acting. There is no reason for this court to preempt the administrative process at this time. As noted supra, the cancellation of a registration and enrollment has no effect on the validity of the nominating petition or Mr. Ruiz’s eligibility for office at this time.
There is no reason why this proceeding should be determined at this time, in the summary fashion prescribed for election cases. The proceeding to challenge a registration is not governed by the short Statute of Limitations in section 16-102 (2). The proceeding is not "with respect to a petition.” (See, § 16-110 [1], which permits bringing a proceeding within two weeks of a primary.) Indeed, the conviction occurred in February (see, Matter of Ruiz v Regan, Sup Ct, Albany County, index No. 1579-89), yet petitioner waited more than five months before starting the cancellation process under section 5-220. Until there is an "adequate investigation” there is no need to strike Mr. Ruiz’s name. (See, Matter of Penney [Walkman], 246 App Div 562.) Indeed, the effect of the appellate stay of Mr. Ruiz’s sentence must be considered. (See, Election Law § 5-106 [5]; 1982 Opns St Bd of Elections, No. 4.)
The petition is dismissed without prejudice to renewal prior to the primary election if the Board has not acted in a timely fashion or to the exercise of any challenge to Mr. Ruiz’s vote.
(On renewal, August 22,1989)
Petitioner brought a proceeding to compel the Board of *815 Elections to cancel the voter registration and enrollment in the Democratic Party of Israel Ruiz, Jr. In a prior decision dated August 14, 1989 this court denied the petition with leave to renew if the Board of Elections acted. This is a renewal of the proceeding based on a copy of the Board’s August 15 ruling and briefs from both sides.
Mr. Ruiz challenges the informal nature of the renewal process and argues that a new verified petition, even under the existing index number, is required. Since there are no disputed issues of fact, and this may well be a primary election case, entitled to priority under article 16 of the Election Law, the court will entertain the informal application procedure and proceed to the merits. The court notes that the Board is already a party here.
The issue in this proceeding is whether Mr. Ruiz’s conviction of a Federal felony requires the cancellation of his voter registration. The Board of Elections’ recent decision is a unanimous ruling that the stay of sentence pending appeal precludes cancellation of Mr. Ruiz’s registration. The decision followed a 1982 formal opinion of the State Board of Elections. There are, however, no reported cases on the subject.
Election Law § 5-106 governs the qualifications of voters. The statute provides that those "convicted in a federal court, of a felony” shall be ineligible to vote (Election Law § 5-106 [3]). However, subdivision (5) provides "The provisions of subdivisions two, three and four of this section shall not apply if the person so convicted is not sentenced to either death or imprisonment, or if the execution of a sentence of imprisonment is suspended.”
There is no doubt that Mr. Ruiz was convicted in Federal court of a felony (18 USC § 1014). He was sentenced to prison for 11 months, of which 5 months were suspended and he was placed on probation. The sentence has been stayed pending appeal.
Petitioner argues that a stay pending appeal does not stay cancellation of Mr. Ruiz’s registration. (Matter of Obergfell, 239 NY 48.) He notes that Mr. Ruiz’s position as State Senator is vacant, notwithstanding the stay, and there is strong public policy in immediately removing convicted felons from office (Matter of Toro v Malcolm, 44 NY2d 146; Matter of Gunning v Codd, 49 NY2d 495). Mr. Ruiz, on the other hand, contends that the terms of the Election Law require a stay of cancella *816 tian even though New York courts cannot impose suspended sentences.
Neither side is correct.
There are no analogous areas of law which give guidance here. For example, section 30 of the Public Officers Law creates a vacancy in office upon "conviction” of a felony. The Election Law uses terms which differ substantially. Conviction of a felony, by itself, is not the only criterion for canceling a voter’s registration. The statute therefore differs from Public Officers Law § 30. The Court of Appeals has spoken as to the policy underlying the Public Officers Law; it has not discussed the Election Law or its implications.
The interpretation of Election Law § 5-106 (5) turns on its language and not as Mr. Ruiz argues, on the change in the sentencing structure under the current Penal Law. The revised Penal Law became effective in 1967 (L 1965, ch 1030), not 1973 as Mr. Ruiz assumes. The 1973 Legislature which added the language now in Election Law § 5-106 (5) (L 1973, ch 679) clearly knew the meaning of the Penal Law adopted eight years before.
Subdivision (5) limits the applicability of the conviction bar to voting. It applies to New York convictions (subd [2]), as well as those from other States (subd [4]) and the Federal courts (subd [3]). The Legislature, in its choice of suspension of execution language was using general, well-established terms to encompass the terminology used by 51 jurisdictions; it did not attempt to continue the repealed language of the 1909 Penal Law.
The court must, therefore, simply read subdivision (5) as written. The clear language precludes denying the franchise to persons who have not been sentenced to imprisonment or "if the execution of a sentence * * * is suspended.” The Legislature deprived convicted felons of the right to vote once they are actually serving a jail term. The ordinary meaning of "suspend” is to "interrupt * * * to postpone; to stay” (Black’s Law Dictionary 1297 [5th ed]). It is reasonable to conclude that a temporary "suspension of execution,” as in the case of a stay pending appeal, was within the purview of this section. It is inappropriate to impose the penalty of loss of the franchise when the penalty of incarceration has not been determined to apply. It is for that reason that the court in Matter of Engel v Board of Elections (143 AD2d 291) held that "Cancellation [of registration] is therefore, not automatic.” At this time Mr. *817 Ruiz’s status is uncertain, since the sentence is temporarily stayed.
The law is well settled that an administrative agency’s interpretation of its governing rules is entitled to great weight (Matter of Herzog v Joy, 74 AD2d 372, 375, affd on opn below 53 NY2d 821). The court cannot, therefore, find the Board’s actions to be unreasonable or inappropriate. The State Board of Elections, acting under its powers (Election Law § 3-102 [1]), reasonably reached the same result. (1982 Opns St Bd of Elections, No. 4.)
In short, the Board has ruled and this court will not direct a contrary result. The petition is denied.