OPINION OF THE COURT
Marvin E. Segal, J.
The petitioner landlord commenced this holdover proceeding to recover possession of an apartment subject to the provisions of the Emergency Tenant Protection Act of 1974 (L 1974, ch 576, § 4, as amended by L 1983, ch 403 [Omnibus Housing Act of 1983]), upon the ground that the apartment is not the primary *846 residence of the respondent tenant. The respondent concedes that the apartment is not his primary residence, but maintains that he nevertheless may avail himself of the provisions of the Emergency Tenant Protection Act entitling a prime tenant to a renewal lease for premises covered by the act.
Among the issues raised herein is one which appears to be of first impression, namely, whether a landlord is precluded from refusing to renew a tenant’s lease on the ground that the premises are not the tenant’s primary residence, if the landlord has not raised the objection during the specified period within which he must otherwise offer a renewal lease.
Based upon the credible evidence adduced at trial, the court finds the following to be the facts of this case. On July 10, 1983, the respondent entered into a lease for the subject premises under the Emergency Tenant Protection Act of 1974 (hereinafter ETPA), the term of which expired on November 30,1984. At the beginning of the lease term, the respondent expended approximately $14,000 to renovate the kitchen of the apartment, although he admits he did not obtain the written consent of the landlord as required pursuant to the terms of the lease agreement. The respondent appears to have resided at the apartment at the beginning of the lease term, but subsequently moved to Vermont, leaving his housekeeper in residence. The respondent concedes that his primary residence is in Vermont, which is the location of the corporation of which he is president.
On September 4,1984, the petitioner sent a notice on the form approved by the State Division of Housing and Community Renewal offering the respondent a renewal lease in accordance with State Emergency Tenant Protection Regulations § 45 (9 NYCRR 2503.5) implementing the ETPA. Section 45 requires a landlord to notify the tenant not more than 90 days and not less than 60 days prior to the end of the tenant’s lease term, by certified mail, of such termination of the lease term and offer to renew the lease at the legal regulated rent and on the same conditions as the expiring lease. (9 NYCRR 2503.5.) The petitioner fully complied with the procedure set forth in the regulation.
Section 45 further requires a tenant to renew the lease and accept the offer within 30 days from the date the notice was mailed, by entering the acceptance on the designated part of the form and returning it to the landlord by certified mail. (9 NYCRR 2503.5.) The respondent testified that on October 1, 1984, he entered his acceptance of the new lease on the form and returned the form to the petitioner. However, although the *847 regulation requires the tenant to return the form by certified mail, and the form so specifies, the respondent testified that he returned the form by regular mail at the direction of the petitioner. The petitioner testified that he did not direct the respondent to respond by regular mail, nor did he ever receive the acceptance.
The court does not find the respondent’s testimony to be credible on this point, particularly in light of the fact that he is an experienced businessman and the president of a corporation. It is not credible that a knowledgeable businessman such as the respondent would send a document as important as a lease renewal form by regular mail, rather than by certified mail as is indicated on the face of the form itself, even assuming the petitioner directed him to do so. The court additionally finds the absence of testimony or evidence at trial that the form was sent with an accompanying cover letter to be further indication that the form was not sent. The only evidence introduced by the respondent purporting to show that the form was timely mailed on October 1, 1984 was his own copy of the acceptance form on which his signature bears that date. Moreover, the petitioner received a letter from the respondent’s attorney, dated October 11,1984, which indicates only that the respondent had received the petitioner’s communication about the lease renewal and requests authorization to change certain terms of the lease. The content of this letter does not indicate that an acceptance had been effected, and is inconsistent with the respondent’s testimony that he had already sent the renewal acceptance form by regular mail on October 1, 1984.
By letter dated October 16,1984, the petitioner withdrew the offer of a renewal lease on the ground that the respondent did not maintain the apartment as his primary residence. The petitioner further notified the respondent by letter dated October 29, 1984, that the lease would not be renewed on the aforesaid ground and that the landlord would commence legal action to evict him if he did not vacate the apartment by November 30, 1984, on which date the lease expired. Both letters were sent by certified mail. The petitioner commenced this summary proceeding on December 3, 1984.
There is no doubt, based upon the evidence presented at trial and the respondent’s own admissions, that the subject premises are not the respondent’s primary residence. Accordingly, the premises are exempt from coverage by the ETPA, pursuant to ETPA § 5 (a) (11) (as amended by L 1983, ch 403, § 55), which section excludes “housing accommodations which are not occupied by the tenant, not including subtenants or occupants, as his *848 primary residence, as determined by a court of competent jurisdiction.” (See also, 9 NYCRR 2500.9 [k].) In accordance with this provision of the ETPA, State Emergency Tenant Protection Regulations § 54 (d) provides that a landlord may refuse to renew a lease and proceed for eviction upon the ground that the housing accommodation is not the tenant’s primary residence, and requires the landlord to give 30 days’ notice to the tenant of his intention to commence such a proceeding upon that ground (9 NYCRR 2504.4 [d]).
The petitioner complied with the 30-day notice requirement. Nevertheless, the respondent contends that the petitioner waived this objection to renewal of the lease by failing to raise the objection during the 90- to 60-day period prior to the expiration of the original lease, and further by offering the respondent a renewal lease during that period in accordance with section 45 of the regulations. The initial question presented, which appears to be of first impression, is whether a landlord is required to raise the objection of nonprimary residence during the 90- to 60-day renewal period under the ETPA and the State Emergency Tenant Protection Regulations, or else be precluded from refusing to offer a renewal lease on that ground.
The published cases pertaining to this question all involve housing accommodations covered by the Code of the Rent Stabilization Association of New York City, Inc. (Code; applicable to New York City), several provisions of which are comparable to the State Emergency Tenant Protection Regulations which govern here. It is well settled that Code § 60, as amended June 29, 1981, which is comparable to State Emergency Tenant Protection Regulations § 45, gives a tenant a right to a renewal lease which vests at the end of the “window” period within which the landlord must offer the tenant the renewal lease (under Code § 60, 150 to 120 days prior to the expiration of the current lease). (See, Short v Graves, 107 Misc 2d 194, affd 109 Misc 2d 672; De Santis v Randolph, 103 Misc 2d 573.) Thus, a landlord cannot defeat a tenant’s right to a renewal lease merely by failing to offer one during that period.
The vesting can, however, be defeated if the landlord proves that one of the grounds for eviction set forth in Code § 54 existed more than 120 days prior to the expiration of the tenant’s lease. (Short v Graves [App Term, 1st Dept 1981], supra; see also, Bradford v Holmes, 109 Misc 2d 805, affd 111 Misc 2d 927 [App Term, 1st Dept 1981]; Bosco v Zbikowski, NYLJ, Nov. 21, 1979, p 12, col 5 [App Term, 2d Dept].)
The Appellate Term, First Department, has not excluded from this rule any of the grounds for nonrenewal enumerated in the *849 Code. However, several lower court decisions, upon which the respondent relies, hold that the tenant’s vested right to a renewal lease cannot be defeated on the ground of nonprimary residence, under Code § 54 (E), unless the landlord has raised the objection during the 150- to 120-day “window” period. (525 Park Ave. Assoc. v De Hoyas, 125 Misc 2d 432; MHM Sponsors Co. v Devon Apparel, NYLJ, Oct. 30, 1984, p 12, col 4; Elwick Ltd. v Howard, NYLJ, May 16, 1984, p 6, col 2; Bolotin v Ameri, NYLJ, Feb. 8, 1984, p 11, col 1.) The respondent argues that this rule applies to State Emergency Tenant Protection Regulations § 54 (d) as well.
The distinction made between nonprimary residence as a ground for nonrenewal and other grounds for nonrenewal enumerated in Code § 54 is apparently based upon the language of section 54 (E) requiring the owner to obtain a determination by the Conciliation and Appeals Board (hereinafter CAB), that the apartment is not the tenant’s primary residence before he can refuse to renew the lease on that "ground. The cases have held that the landlord must apply for the CAB determination during the 150- to 120-day “window” period, in effect giving the tenant an opportunity to cure. (Bolotin v Ameri, supra; Vance v Century Apts. Assoc., 93 AD2d 701, 704 [1st Dept 1983, Kassal, J., dissenting]; Elwick Ltd. v Howard, supra.)
This court finds that this line of reasoning has no application to the case at bar, which is governed by the ETPA and the State Emergency Tenant Protection Regulations. Section 54 (d) of the regulations differs significantly from Code § 54 (E), in that a landlord wishing to refuse to renew a tenant’s lease is not required to obtain a preliminary determination by any agency that the apartment is not the tenant’s primary residence, nor is he required to notify the tenant of this ground for nonrenewal at any specified time other than 30 days prior to commencement of the eviction proceeding. Indeed, section 54 (d) is the only ground for nonrenewal under which an owner may proceed without first applying to the State Division of Housing and Community Renewal (hereinafter DHCR) for an order permitting the owner to commence an eviction proceeding. (See, 9 NYCRR 2504.4 [a] [4]; [c].)
Moreover, recent amendments in this area effected by the Omnibus Housing Act of 1983 have rendered these decisions obsolete. Initially, it must be noted that the Omnibus Housing Act of 1983 dissolved the Conciliation and Appeals Board, transferring all functions and powers of the CAB to the State Division of Housing and Community Renewal as of April 1, 1984. (L *850 1983, ch 403, §§ 16, 64.) Further, the Rent Stabilization Law (Administrative Code of City of New York § YY51-1.0 et seq.) was amended to exclude from coverage dwelling units “not occupied by the tenant, not including subtenants or occupants, as his primary residence, as determined by a court of competent jurisdiction, provided, however that no action or proceeding shall be commenced seeking to recover possession on the ground that a housing accommodation is not occupied by the tenant as his primary residence unless the owner or lessor shall have given thirty days notice to the tenant of his intention to commence such action or proceeding on such grounds”. (Administrative Code § YY51-3.0 [a] [1] [f], as added by L 1983, ch 403, § 41; emphasis added.) Thus, this provision now conforms with ETPA § 5 (a) (11) and State Emergency Tenant Protection Regulations § 54 (d) (9 NYCRR 2504.4 [d]). Jurisdiction over the issue of nonprimary residence has been placed squarely with the courts, rather than with the DHCR, rendering Code § 54 (E) void, and the only notice required to be given the tenant is 30 days prior to the commencement of an eviction proceeding.
The only ground for nonrenewal under the Rent Stabilization Law, as amended by the Omnibus Housing Act wherein the owner is required to give the tenant additional notice of his intention not to renew the lease is where the owner seeks to recover possession under Administrative Code § YY51-6.0 (c) (9) (c) for charitable or educational purposes. Only in such an instance is an owner required to give the tenant additional notice, between 150 and 120 days prior to the end of the tenant’s lease term, of its intention not to renew the lease. (Administrative Code § YY51-6.0.4 [a].)
In light of the foregoing, the court finds that the petitioner complied with the applicable notice requirement set forth in State Emergency Tenant Protection Regulations § 54 (d) by giving the respondent more than 30 days’ notice of his intention to commence the instant eviction proceeding upon the ground that the apartment is not the respondent’s primary residence. The petitioner has demonstrated to the court’s satisfaction that this ground for nonrenewal existed long before the respondent’s right to a renewal lease vested. The petitioner’s failure to raise this objection to renewal during the 90- to 60-day “window” period prior to the expiration of the lease does not preclude it from refusing to renew the lease at a later date.
The respondent advances as a second argument that the petitioner waived this objection to renewal of the lease by offering the respondent a renewal lease during the 90- to 60-day *851 “window” period, in accordance with section 45 of the regulations, and that the petitioner could not withdraw the renewal offer once it had been accepted by the respondent. Case law holds that a landlord may not withdraw a renewal offer for a rent-stabilized apartment once the offer has been timely accepted by the tenant, nor may he withdraw the offer before the tenant’s time within which to respond to the offer has expired. Thus, in De Santis v Randolph (supra), the Appellate Term, First Department, held that a landlord could not utilize one of the grounds for nonrenewal enumerated in the Code to withdraw a renewal offer after it had been accepted by the tenant and before the tenant’s acceptance period had expired.
However, this argument is without merit in the case at bar. The court finds that the respondent failed to accept the renewal offer within the 30-day acceptance period afforded him by State Emergency Tenant Protection Regulations §45 (9 NYCRR 2503.5), and further that the petitioner withdrew the offer well after the 30-day period had expired. Accordingly, the petitioner is not precluded on this ground from withdrawing its renewal offer.
The respondent’s final contention is that the petitioner, having permitted or induced the respondent to perform renovations on the apartment at an approximate cost of $14,000, is estopped from asserting the respondent’s nonprimary residence as a ground for refusing to renew lease. The gist of the respondent’s argument appears to be that the petitioner promised the respondent that he would be a long-term tenant by successive renewals under the ETPA, thereby inducing the respondent to make costly improvements on the apartment, and that the petitioner must now be estopped from asserting the respondent’s nonprimary residence.
An estoppel is “imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party’s words or conduct, has been misled into acting upon the belief that such enforcement would not be sought.” (Nassau Trust Co. v Montrose Concrete Corp., 56 NY2d 175, 184, citing White v La Due & Fitch, 303 NY 122, 128.)
The respondent has failed to prove the presence of any of the elements of estoppel in the case at bar. From the evidence presented at trial, it appears that the petitioner was not aware that the respondent did not intend to maintain the apartment as his primary residence at the time the improvements were made, *852 and indeed the respondent appears to have maintained it as his primary residence at that time. This being so, the petitioner’s consent to the improvements, which consent was not established at trial, would not have given rise to an equitable estoppel or estoppel in pais. Any misrepresentation of fact appears to have been made by the respondent rather than by the petitioner.
The court feels compelled to note that the Legislature’s intent in enacting the ETPA and the Omnibus Housing Act of 1983 was to preserve scarce housing accommodations, in the face of a serious housing emergency in New York City and its suburban counties, for tenants who maintain such dwellings as their primary residence. (See, Lufkin v Drago, 126 Misc 2d 177; L 1983, ch 403, § 1; ETPA.) The public interest requires that scarce housing accommodations be preserved for such tenants protected by the statutes, who otherwise face difficulty and hardship in locating suitable housing.
A party may not rely upon estoppel to reward a practice which violates public policy. (Millington v Rapoport, 98 AD2d 765 [2d Dept 1983].) Under the facts of this case, if the respondent was permitted to retain possession of the subject premises based upon the doctrine of equitable estoppel, despite the fact that he has no intention of maintaining the premises as his primary residence, the legislative intent in enacting these statutes would be subverted. Consequently, the court finds that even if the respondent had established that the elements giving rise to estoppel were present here, application of the doctrine of estoppel would violate public policy.
In light of the foregoing, final judgment is directed in favor of the petitioner awarding possession of the premises, together with costs and disbursements of this action. Issuance of a warrant of eviction is stayed for a period of two months from the date of this decision. The respondent is directed to continue to pay the petitioner use and occupancy, as stipulated by the parties, for that period.
The petitioner’s application for attorney’s fees is denied in view of the fact that this is a holdover proceeding. The lease agreement only provides for payment of such fees in the event of a default in payment of rent.