OPINION OF THE COURT
J. Emmett Murphy, J.
This is a summary proceeding in holdover to recover possession of an apartment regulated by the Emergency Tenant *830 Protection Act of 1974 (ETPA) (L 1974, ch 576, §4), and tenant protection regulations promulgated thereunder (TPR) (9 NYCRR 2500 et seq.). The landlord alleges that the apartment is no longer the primary residence of the named tenant, and that he is not required to offer a lease renewal to the tenant’s sons, both of whom remain in the apartment. While succession rights to apartments have been the frequent subject of litigation in the context of the rent control laws and the New York City Rent Stabilization Law (RSL) (Administrative Code of City of New York § 27-501 et seq.) and Rent Stabilization Code (RSC) (9 NYCRR 2520 et seq.), the issue of succession rights under the ETPA does not appear to have been the subject of any reported decision.
This case was submitted on the day set for trial on an agreed statement of facts with agreed exhibits. Additionally, respondents stipulated to all of the facts alleged in the petition and the first paragraph of the rider thereto.
On March 21, 1978, respondent Paul J. Mulqueen applied to rent the subject apartment from petitioner One Vincent Road Realty Corp. The application listed only himself and his then future wife as the proposed occupants of the apartment. The lease entered into on May 1, 1978 provided that only Paul J. Mulqueen and members of his immediate family were to occupy the apartment. Within a few months of moving into the apartment, Mr. Mulqueen was joined by his two pre-teenaged sons of a previous marriage, Paul, Jr. and Michael, both of whom have continued to live there through the present.
The most recent renewal of the lease expired on May 31, 1988.
On October 26, 1987, Mr. Mulqueen wrote to Louis Kaplan, president of the corporate landlord, stating that he and his wife would be vacating the apartment on or about December 1, 1987. (It is admitted that they vacated shortly thereafter.) He stated that his sons requested to remain "and become the primary tenants of record.” He listed their employer and salary, consented that his security deposit be applied to their lease, and requested that a new lease be issued in their names beginning December 1, 1987 at the then present rental rate.
On November 2, 1987, one Robert E. Herman, an attorney, wrote to the tenant stating that Mr. Kaplan had referred the request to him for reply. He quoted the request contained in the letter, and stated that the landlord was refusing the request for a new lease. He stated that the apartment was to be surrendered to the landlord when the tenant vacated.
*831 On November 7, 1987, the tenant filed a written complaint with the New York State Division of Housing and Community Renewal (DHCR) alleging the refusal contained in the letter as the basis of a complaint of "illegal eviction.”
On March 9, 1988, referring to a notice to the tenant dated January 20, 1988 and a direction from DHCR dated February 18, 1988 (neither of which was submitted to the court), Attorney Herman served, and filed with DHCR, a notice of intent to commence an eviction proceeding.
On April 19, 1988, DHCR issued its order and determination in the matter. It recited that the tenant had complained of improper eviction, and that the owner had answered that the tenant had vacated and the current occupant was not entitled to the apartment.
It recited the requirement in TPR § 2504.4 that the tenant be given 30 days’ notice of the landlord’s intent to evict before commencing such proceeding, and concluded by holding that "inasmuch as the owner had complied with Section 2504 of the Regulations, the issue raised in this proceeding must be adjudicated in a court of competent jurisdiction.” The order terminated the proceeding without addressing the question of succession rights to the apartment. It stated: "The tenant is advised that he need not vacate unless ordered to do so by a court order.”
On May 4, 1988, the law firm of D’Andrea and Goldstein, acting as petitioner’s agent, sent a notice to quit the premises by June 30, 1988 stating that summary proceedings would be commenced if possession was not delivered by that date. Thereafter, a notice of petition and petition were served and filed. The matter was set for trial, submitted and adjourned for memoranda of law. The attorneys stipulated in court that the sole issue to be decided was whether tenant Mulqueen’s sons were entitled to a renewal lease.
Counsel for respondent, contrary to his agreement on the day set for trial, now advances a number of arguments addressed to the petition, and the form and timing of the various notices sent to respondent. They may be disposed of briefly.
The petition does, in fact, allege that the property is subject to the ETPA. The allegation is contained in the rider.
No allegation of compliance with the warranty of habitability is necessary as the petition is in holdover, not nonpayment. (See, Excel Assocs. v Morales, 114 Misc 2d 279.)
Respondent’s arguments concerning a notice of intent not to *832 offer a renewal lease must fail. The notice of March 9th was served within the 90-60-day window, was sent by certified mail, was factually sufficient and confirmed the earlier notice of intent not to renew. While it is arguable whether such notice is necessary under ETPA and TPR (compare, Warhit Real Estate v Krauss, 127 Misc 2d 845, affd, 131 Misc 2d 429, with Crow v 83rd St. Assocs., 68 NY2d 796) the court concludes that such notice was sent.
Respondent’s arguments concerning the fact that the notices came from attorneys must also fail. This case is distinguishable from Siegel v Kentucky Fried Chicken (108 AD2d 218, affd 67 NY2d 792). A number of factual differences remove it from the rule that certain notices must come from the landlord and not an attorney. Here, it was the tenant who initiated the matter by announcing to the landlord his intention not to renew. What he received from the attorney was a reply to his letter. A reply from counsel carries its own implicit evidence of referral and authorization, which are to be inferred from the fact that an attorney is answering the original inquiry.
Further, the tenant fully accepted the fact, evidenced in the reply and later confirmed at DHCR, that the matter had been referred to counsel. He did not ignore the notice. He commenced a proceeding in DHCR to contest the "illegal eviction” of his sons, and in this respect, he was acting as their agent. After he and the landlord contested the matter fully, DHCR ruled that the notices had been properly sent, and that the landlord had complied with TPR § 2504. No appeal from that order was taken.
The communication from trial counsel arrived in the context of a continuum of communications. The order from DHCR, received only two weeks earlier, clearly advised the tenant that the landlord had correctly taken the initial steps toward eviction, and that further proceedings could be expected.
Finally, in court, both parties stipulated to the first paragraph of the rider to the petition, which states in part that the premises are governed by the ETPA, and that "[t]he prescribed * * * notices have been duly served and filed”. The tenant did not raise the issue of authority until after litigation at DHCR, and after the answer date of the summary proceeding. On the date set for trial he stipulated as to the notices and submitted another issue to the court, only later to claim *833 that the notices sent by attorneys forced him to guess as to their authenticity and act at his peril. Both he and Kaplan were present in court.
From all the circumstances of the case the tenant was on notice, and knew "with safety,” that authorization was a fact and not an issue, that Kaplan refused to offer a renewal and had referred the matter to counsel, and that eviction would be sought. (See, e.g., Reeder v Sayre, 70 NY 180.) He has advanced no reason to relieve him of the stipulation made by counsel in open court. (See, e.g., Ragen v City of New York, 45 AD2d 1046.) The prescribed notices were duly served.
We thus arrive at the controversy of substance between the parties: whether members of the immediate family of a named tenant who has voluntarily left an ETPA-controlled apartment may elect to remain there, succeed to the rights of the named tenant, and demand a renewal lease in their own names on expiration of the current lease. The court concludes that they may.
ETPA § 8625 (a) (11) withholds the protection of its regulatory scheme from "housing accommodations which are not occupied by the tenant, not including subtenants or occupants, as his primary residence, as determined by a court of competent jurisdiction.”
TPR § 2500.9 (k) withholds protection from "housing accommodations which are not occupied by the tenant in possession as his primary residence.”
ETPA § 8630 (a) empowers DHCR to enact regulations which "shall require owners to grant a new one or two year * * * renewal lease at the option of the tenant”.
TPR § 2503.5 (a) requires that "every landlord shall notify the tenant in occupancy” of the impending end of his lease, and "offer to renew the lease”.
TPR § 2504.4 (d) provides that a landlord need not offer a renewal lease where the "housing accommodation is not occupied by the tenant, not including subtenants or occupants, as his primary residence, as determined by a court of competent jurisdiction.”
TPR § 2505.7 (e) provides that "no action or proceeding based upon the nonprimary residence of a tenant may be commenced prior to the expiration date of his lease.”
Finally, TPR § 2500.2 (h) defines "tenant” as: "A tenant, subtenant, lessee, sublessee, or other person entitled to the possession or to the use or occupancy of any housing accom *834 modation.” (In the context of a primary residence case, the terms "tenant” and "lessee” have essentially identical meaning, as have "subtenant” and "sublessee”.)
Neither the ETPA nor the TPR contains an express provision similar to RSC § 2523.5, which sets out in detail the persons to whom a renewal lease must be offered in the event a tenant dies or voluntarily vacates an apartment located in New York City. The absence of such a provision raised the question of whether this was a deliberate omission, calculated to deny the right of renewal contained in the ETPA to all but the named tenant. The court concludes that it was not.
The RSC provision was enacted as a response to Sullivan v Brevard Assocs. (66 NY2d 489), in which the Court of Appeals held that, where there is neither a broad definition of the "tenant” entitled to renewal, nor an express succession provision, only the tenant named in the lease may renew. The court specifically noted the broad definition of "tenant” contained in TPR § 2500.2 (h) and other regulations and laws, and found it "conspicuously absent” from the New York City RSL. (Supra, at 493.)
Under the TPR, it is this broad definition of "tenant” which actually confers succession rights on the classes named therein, as a person in such a class becomes a "tenant” to whom the landlord must offer a renewal lease. If DHCR enacted a regulation under the ETPA specifying succession rights in, for example, immediate family members living with the tenant from inception of the lease, this would constitute a limitation, and not a conferral, of the succession rights implicit in the broad definition of "tenant”. The court thus concludes that the absence of a succession provision from the TPR was not intended to limit renewal rights to tenants named in the lease.
As to whether DHCR may declare succession rights through a regulation which finds no specific counterpart in its statute, the Appellate Division, First Department, in Festa v Leshen (145 AD2d 49), upheld the RSC succession provision, and equated it with the TPR definition of "tenant”, and State and city rent-control regulations on succession rights. It also noted that the Court of Appeals, in Sullivan v Brevard Assocs. (supra), had noted TPR § 2500.2 (h) "with approval”. (Supra, at 58.) The court concludes that the validity of TPR § 2500.2 (h) has been upheld.
TPR § 2504.4 (d) limits the succession rights implicit in TPR *835 § 2500.2 (h) by stating that the landlord is not required to offer a renewal lease when only "subtenants or occupants” occupy the housing accommodation as their primary residence. Real Property Law § 235-f (1) (b) defines "occupant” as "a person, other than a tenant or a member of a tenant’s immediate family, occupying a premises with the consent of the tenant or tenants.”
The lease in this case permits occupancy "by Tenant and the members of the immediate family of tenant”. TPR § 2500.2 (m) defines "immediate family” as "Husband, wife, son, daughter, grandson, granddaughter, stepson, stepdaughter, father, mother, father-in-law, mother-in-law, grandfather, grandmother, stepfather or stepmother.” Thus, facially, the sons of tenant herein meet the requirement of TPR § 2500.2 (h) as "other person[s] entitled to the possession or to the use or occupancy of any housing accommodation.”
While the court has the power to apply this interpretation of the regulations to the facts in this case, the court is also mindful of the absence of a detailed regulation, limiting TPR § 2500.2 (h), and of the absence of any reported decision on the point. Facially, the regulation would permit the apartment to be "passed along like a baton” among family members, contrary to the limitations soundly imposed under rent control and rent stabilization.
Under these circumstances, where a number of first-instance interpretations are possible, it is salutary if not necessary to obtain the administrative agency’s interpretation (see, e.g., Swift v 130 W. 57th Corp., 26 NY2d 714; Walsh v Somerville, 75 AD2d 511). While the court has jurisdiction to interpret the regulation, the concept of "priority or primacy of jurisdiction” urges that the court " 'tak[e] into account what the agency has to offer’ ” in the first instance. (Saljen Realty Corp. v Human Resources Admin. Crisis Intervention Servs., 115 Misc 2d 553, 555.) While DHCR declined to address the succession question in the earlier proceeding between the parties, the court is aware that it has done so, to some extent, in other claims of illegal assignment or nonprimary residence. (See, e.g., Matter of Brookview Assocs. v State of New York, Div. of Hous. & Community Renewal, index No. 20401/83, slip opn [NY County, Jan. 1, 1984], affd 105 AD2d 1169, lv denied 64 NY2d 603.)
Accordingly, pursuant to TPR § 2506.7, the court certified in a letter to DHCR, on notice to trial counsel, that the tenant *836 herein relied for a defense on the construction of the word "tenant” in TPR § 2500.2 (h) to entitle a family member to a renewal lease, and asked if they wished, amicus curiae, to give their interpretation of it.
DHCR replied, in a letter from Nat Geller, Assistant Deputy Counsel, that DHCR has for some time interpreted "tenant” to mean "that a member of the named tenant’s immediate family, as defined at 9 N.Y.C.R.R. [TPR] section 25[0]0.2 (m), is entitled to be considered as a 'tenant’ entitled to possession of the premises, to a renewal lease, and to all other rights under the ETPA and Tenant Protection Regulations. In order to establish such rights, that person must establish that he lived with the named tenant as a 'family unit’ for a sufficient period of time so as to denote permanency.” He added that, while DHCR’s "rule of thumb” is that less than six months indicates lack of permanency and more than six months indicates permanency, "[t]he Division looks at the totality of the circumstances to finally determine whether or not the member of the family is entitled to be recognized as a tenant of the apartment.”
This statement by DHCR contains four significant and rational interpretations:
First, the "other person entitled to the possession” of the apartment, who qualifies as a "tenant” under TPR § 2500.2 (h), must be a member of the named tenant’s "immediate family”. This is entirely consistent with the statutory and regulatory schemes applicable to rent control and rent stabilization.
Second, while the TPR specifically relates the phrase "immediate family” only to the owner’s immediate family (see, e.g., TPR § 2504.4 [a]) the definition in TPR § 2500.2 (m) may be applied to the tenant’s family in determining who may be entitled to renew a lease. This is again consistent with rent control and rent stabilization. The TPR definition of "immediate family” is similar to the concept of "family” as developed and applied by agency and court to the rent-control laws and regulations. (See, Matter of Herzog v Joy, 74 AD2d 372; Matter of Waitzman v McGoldrick, 20 Misc 2d 1085.) It is less expansive than the rent stabilization definition applicable to succession rights (see, RSC § 2520.6 [o]), but the more expansive definition is more sparingly applied, requiring, for example, cotenancy at inception of the lease where the tenant’s departure is voluntary. (RSC § 2523.5 [b] [1].) (The DHCR *837 letter did not say whether, for example, in the case of a brother or sister, they would follow Herzog v Joy [supra], or TPR § 2500.2 [m], but that need not be decided herein, as sons meet all definitions of immediate family.)
DHCR’s interpretation that TPR § 2500.2 (m) applies to a tenant’s "immediate family” as well as an owner’s also provides a logical complement to Real Property Law § 235-f and standard leases, both which use, but do not define, the phrase.
Third, DHCR’s interpretation that the member of tenant’s immediate family must have lived with him or her as a member of a "family unit” adopts the phrase and test previously formulated by a regulating agency and approved by the courts (Matter of Waitzman v McGoldrick, supra, and other cases cited in Matter of Herzog v Joy, supra) to avoid the result that departing tenants may pass the key and the apartment to incoming relatives "like a baton in a relay race”. (Melohn v Heins, NYLJ, Apr. 14, 1981, at 6, col 1 [App Term, 1st Dept].) Under both rent control and rent stabilization, a period of simultaneous occupancy, under circumstances evincing some degree of permanence and continuity, is used to determine "family”.
Fourth, DHCR’s standard, applied when it determines such questions, is to look "at the totality of the circumstances” in determining whether an individual is a qualified relative, who has lived in a "family unit” with the tenant, and is thus entitled to a renewal lease.
All of these interpretations enjoy a rational basis. They are firmly grounded in the regulations and court decisions interpreting similar laws and regulations. They further the stated purposes and intendment of the ETPA and TPR, are not overbroad, and adopt concepts and phrases with well-defined meanings. They are in harmony with the plain meaning of the regulations and statute.
Further, these interpretations need not take the form of a formally promulgated regulation. Two Assocs. v Brown (127 AD2d 173) found such need where succession rights are declared or conferred. TPR § 2500.2 (h), a formal regulation, performs that function under the ETPA. These interpretations only circumscribe the rights so declared.
Finally, such agency interpretations, when found to be authorized and rational, are entitled to great deference from the courts. (See, e.g., Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451; Matter of Herzog v Joy, supra.)
*838 The record clearly establishes that Michael and Paul Mulqueen, Jr. are immediate family members who lived with the tenant, as a family unit, for nine years, and virtually from the inception of the tenancy. They are "tenants” within the meaning of TPR §2500.2 (h) and are thus entitled to a renewal lease in their own names. Since the apartment is occupied by "tenants” who use it as their primary residence, the petition is dismissed.